FRANK DUFF FRAZIER, *Appellant,* v. BRENDA FRAZIER, now BRENDA WATRISS and F. N. WATRISS, *Appellees*

147 So. 464.

En Banc.

Opinion filed March 21, 1933.

Re-hearing denied April 14, 1933.

*Wideman, Wideman & Wardlaw* and *Jackson, Fuller, Nash & Brophy,* for Appellant;

*Robert H. Anderson, Valz & Wise, Sullivan & Donovan*
(N. Y. City) and *Leslie R. Naftzger* (Paris France) for
Appellees.

PER CURIAM—On January 20, 1926, a decree of divorce
was entered in the Circuit Court of Palm Beach County di-
vorcing Brenda Frazier from her husband, Frank Duff
Frazier, on the ground of desertion. In that decree it was
provided, pursuant to a written stipulation of the parties, ac-
cepted and approved by the Chancellor, that the custody
and control of the only child born of the marriage, Diana
Frazier, be awarded as follows: "The said child Diana shall
remain in the custody of her paternal grandmother, Clara
Duff Frazier, until the 15th day of May, 1926, and there-
after from October 15th until the succeeding May 15th in
each year, such custody to be deemed that of the defendant
(Frank Duff Frazier) ; and from May 15th, 1926, until Oc-
tober 15th, 1926, and from May 15th until October 15th in
each succeeding year, the said Diana shall be in the custody
of the complainant, Brenda Frazier. In the event of the
death of said Clara Duff Frazier, the custody of the said
child, Diana, shall be equally divided between complainant
and defendant."

There were additional provisions in the decree affecting
Diana's custody, which are not material to be recited here.

On February 8, 1928, petition for modification of the de-
cree affecting Diana's custody was filed by her mother, who
by marriage, had become Brenda Frazier Watriss.

On November 17, 1931, after volumes of testimony had
been taken and submitted to the court for and against the
petition of the mother, and a counter petition which had
been filed by the father, the court entered an order amend-
ing the final decree, by awarding the custody and control of
the child, Diana, to her mother, Brenda Frazier Watriss.

The amended decree provided that Frank Duff Frazier,

the father, should have leave to visit with Diana at all reasonable and convenient times and places, and that he should have "leave" to have his daughter Diana visit him at his expense at some reasonable and convenient place and time or times, which in each calendar year should not exceed the aggregate of two weeks.

This appeal has been taken by the father, Frank Duff Frazier, to the order amending the final decree. It has previously been dealt with by an opinion filed in this cause on the 14th day of January, 1932, reported in 105 Fla. 102, 139 So. Rep. 189, with respect to appellant's motion for allowance of a supersedeas pending his appeal.

The original decree of January 26, 1926, in accordance with a written stipulation between the parents of the child, filed in the record and approved in the decree, divided the custody of the child equally betwen the child's father and mother, after the death of Clara Duff Frazier, the grandmother. The amendment to the final decree, which is not appealed from, in practical operation and effect, to all intents and purposes, entirely deprives the child's father of any substantial right to its custody. This is so, because with the exception of a two weeks period out of each year, during which the father is granted "leave" to have his child visit him, the custody is given entirely to the mother and her latest husband.

The original decree reserved the right of the court to modify it at some future date should occasion require such modification with respect to Diana's custody. This is an authorized provision in such decrees, because no decree made at the time of granting divorce can anticipate changes which may later occur that will necessitate modifying the decree for those sufficient causes that the courts have recognized as warranting a court in changing its decrees fixing the custody of children when brought to the court's attention.

It is undoubtedly the law of this state that the proper custody of a minor child of divorced parents is a proper subject for judicial consideration at any time by the Court which granted the decree of divorce. Meadows v Meadows, 78 Fla. 576, 83 So. Rep. 392. But it is likewise the law that a decree in a divorce suit, fixing the custody of a child of the parents being divorced, whether based on a stipulation entered into by the parties and approved by the court, or whether entered by the court after adversary hearing and determination, of a contested issue respecting the matter is, nevertheless, a final decree of the Court on the conditions then existing, and is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child. Cariens v. Cariens, ·50 W. Va. 113, 40 S. E. Rep. 335; 55 L. R. A. 930; Dawson v. Dawson, 57 W. Va. 520, 50 S. E. Rep. 613; 110 A. S. R. 800; Milner v. Gatlin, 143 Ga. 815, 85 S. E. Rep. 1045, L. R. A. 1916 B 977; 19 C. J. 350.

The proper rule is that a decree in a divorce case providing for the custody and care of a child of the marriage is to be regarded as *res adjudicata* as of the time of the decree, but attributing such effect to it does not prevent a subsequent adjudication in the same jurisdiction touching the custody and maintenance of the child. Ann Cas. 1916 B, 894, note. Meadows v. Meadows, *supra*.

The statutes of this state recognize the natural, inherent and consequently legal, right of parents to have the custody of their children. This is a principle resulting from their obligation to maintain, protect and educate them. See Chapter 8478, Acts of 1921, Section 5884 C. G. L. These

duties are thrown upon parents by the laws of nature, as well as of society and the state.

The primary duty of support and maintenance for chilren rests upon the father—a duty he is not permitted to disregard, and which he could not conveniently discharge if the objects of his duty are entirely withdrawn from his control. 9 R. C. L. 471. Consequently, when a court is called upon, after divorce of the parents, to determine who shall have the custody and care of children of the marriage, it must take into consideration all of the circumstances of each particular case, and dispose of the children in such manner as may preserve, as far as practicable, the rights of the parents and which also appear best calculated to secure for the children proper care and attention, as well as virtuous education.

The welfare of the child must, of course, be regarded as the chief consideration (Hernandez v. Thomas, 50 Fla. 522, 39 So. Rep. 641, 2 L. R. A. (N. S.) 203, 111 Am. St. Rep. 137, 7 Ann. Cas. 446), but the inherent rights of parents to enjoy the society and association of their offspring, with reasonable opportunity to impress upon them a father's or a mother's love and affection in their upbringing, must be regarded as being of an equally important, if not controlling consideration in adjusting the right of custody as between parents in ordinary cases. No relationship in life should be regarded as more sublime, nor should any inherent right of an individual be esteemed more highly, than that which arises out of the natural relationship of love and affection which normally exists between parent and child, regardless of what may be the private individual code of morals, or the race, color, creed or station in life of the father or mother.

In awarding the custody of the child in the first instance, a very large discretion must be permitted to the Chancellor,

and this Court has many times so recognized that such is the applicable rule of law. But the discretion is a judicial discretion even in such cases, and is subject to judicial review. Harris v. Harris, 115 N. C. 587, 20 S. E. Rep. 187; 44 A. S. R. 471; Cohn v. Scott, 231 Ill. 556, 83 N. E. Rep. 191, 121 A. S. R. 342. The dominant thought is that children are not chattels, but intelligent beings and moral beings, and that, as such, their welfare and happiness is of first consideration. Kenner v. Kenner, 139 Tenn. 211, 201 S. W. Rep. 779, L. R. A. 1918E 587. But the fact that a child would have better prospects or advantages in the custody of one parent than in that of the other, and that one is able to do much for the child that the other is not, has never been considered as a controlling factor in determining the question of custody, if all the child's needs are to be supplied in either situation. Kenner v. Kenner, *supra.*

It has been expressly held that it is not illegal for parents who have separated, to enter into a contract or stipulation with each other for the custody and maintenance of their child, but that such contract or stipulation is always subject to the acceptance and approval of the court, which should not recognize any such contract, unless it is one which insures the proper care and maintenance of the child. Edleson v. Edleson, 179 Ky., 300 200 S. W. Rep. 623 2 A. L. R. 689.

In the case this Court now has before it, such a contract or stipulation was duly entered into between the parents, and thereafter it was approved by the Chancellor and made a part of his final decree of divorce which fixed the custody of the child, Diana, in accordance therewith. As has been hereinbefore pointed out, such final decree is *res adjudicata* as of the time of the decree, but does not prevent, upon a proper basis being laid, a subsequent adjudicaton touch-

ing the care and maintenance of the child involved, when facts and conditions have arisen which warrant and justify such modification. Weatherton v. Taylor, 124 Ark. 579, 187 S. W. Rep. 450; Milner v. Gatlin (Ga.), *supra;* Meadows v. Meadows (Fla.), *supra.*

The record in this case, consisting as it does of many pages of testimony concerning alleged acts of misconduct of the parents, charged to have been committed in both domestic and foreign jurisdictions, is not of such character that either parent can point to it with unabashed confidence as establishing in his or her behalf, any superior qualification for exercising parental rights over an eleven-year-old female child.

Both parents have been re-married since their divorce. Neither of them is shown by the record to be in a position to commend to the child here involved, when she attains her majority, a perusal of the pages of this transcript for the purpose of enabling her to search out and follow any good example of conduct or character heretofore set by either of them. Whether or not the charges or counter-charges that have been made are to be regarded as true, is a proposition concerning which we refrain from expressing any opinion.

The evidence shows that the child's father is wealthy and that the material welfare of Diana Frazier will be amply provided for, however the custody be divided between the contentious parents. There is evidence to support the conclusion that a change in the former decree fixing the custody of Diana between the parents is justified in the interest of allowing the child to have more of the society and association of other children of her own age, and also in order to prevent undue interruptions in her program of schooling. But there is no sufficient evidence to warrant

the conclusion that the mother is so much better able to advance the interests of the child, that the father should be entirely deprived of it for all of the time, except two weeks in each year.

The father is not only entitled to have "leave" for the child to visit him for two weeks each year, but is entitled to have and enjoy its society for a reasonably sufficient length of time each year to enable him to inculcate in her mind a spirit of love, affection and respect for her father. A majority of the Court are of the opinion that this can be accomplished by so modifying the present decree as to permit the father to have the custody and society of his child not less than three months in each year, at such period as the Chancellor may by decree authorize, having in view the educational program of the child.

To the extent that the decree appealed from denies to the father the right to have the companionshp, society and custody of his only child for at least three months in each year, it appears to have been based on an erroneous conception of the relative rights of the parents, as well as on a mistaken view as to the issue that is required to be decided in a proceeding like this.

Where a final decree has already once definitely fixed the custody of a minor child as between its divorced parents, the effect of a petition filed to modify the decree, is to raise an issue as to whether or not sufficient cause exists at the time of filing the petition and subsequently, to require a change in the provisions of the earlier decree respecting the child's custody. The trial of such an issue involves a determination of the proposition, whether not, there is any factual basis sufficient to show that conditions have become materially altered since the entry of the previous decree. But another equally important legal proposition involved is

what should be the appropriate scope of any change found to be necessary to be made, in order to provide for the child's welfare and at the same time preserve the legal rights of the child's parents to its reasonable custody and control.

By the original decree the father was ordered to pay to the child's mother for her support and maintenance, and for the support and maintenance of the child, Diana Frazier, the sum of fifteen thousand dollars a year. So far as the present support and maintenance of the child is concerned, the father has been ordered by the present decree to pay for the support of Diana, the sum of $750.00 per month, a sum which the father has not objected to paying in the past because the former decree accorded him substantial rights in the child's custody. While the present allowance appears to be extravagant for the purpose we will not disturb it for the present, though we do not wholly approve it in view of the change in the period of custody now made.

That the father has an unusual feeling of affection for his only daughter has not been successfully refuted. Indeed this trait appears to be one of the few commendable characteristics he has shown in an otherwise sordid career. Neither parent appears to have been in the past, nor appears to be now, any paragon of virtue in parenthood. Nor can it be said that the mother of the child, even under the improved conditions claimed to exist since her last marriage, is on this record entitled to any more consideration as a parent than is the father.

A majority of the Court are of the opinion that the amendatory order appealed from was justified by the evidence, in so far as it found that the welfare of the child required a change in the prevailing arrangement for divided custody. But a majority of the Court are likewise of the opinion that the Chancellor was in error in so com-

pletely altering the earlier decree as to, in effect, deprive the child's father of practically every vestige of his personal right to reasonably associate with and enjoy the companionship of his only child. Parental rights of the father growing out of the father's legal responsibility, as well as recognized moral obligation, to maintain and care for both the mother and their children, when other considerations do not materially predominate against it in the interest of the welfare of children, must be accorded due consideration by a court in making an order, or in changing an order, as to the custody of children therefore enjoyed by the father. See Hopkins v. Hopkins, 84 Fla. 500, 94 Sou. Rep. 157; McCann v. Proskauer, 93 Fla. 383, 112 Sou. Rep. 621.

The decree appealed from should be affirmed in part and reversed in part, and the cause remanded to the court below for the entry of an amended decee not inconsistent with the views expressed in this opinion, the costs to be assessed equally against the parties.

Affirmed in part, reversed in part and remanded.

DAVIS, C. J., WHITFIELD, J., and JOHNSON, Cicuit Judge, concur.

TERRELL, J., agrees to the conclusion.
BROWN and BUFORD, J. J., dissent.

BUFORD, J., Dissenting.—I find in the record ample evidence to support the decree entered by the Chancellor who had the parties and witnesses before him. I find no evidence reflected by the record that the Chancellor either misconceived or misapplied the law governing such cases. The record abounds with undisputed proof that between the time of the entry of the original decree and the time of the entry of the modified decree the father here involved availed himself but little if any of the pleasure or privilege of the society or control of the child. That he left her to the care, so-

ciety and control of persons employed by him for that purpose while he pursued pleasure and conduct in which she could not participate.

The decree I think should be affirmed.

BROWN, J., concurs.

PER CURIAM.—This cause coming on to for further consideration upon Appellee's petition for a re-hearing, it seems to a majority of the Court that the petition for a re-hearing should be denied, but that the judgment of the Court herein, with respect to taxing one-half the costs against the appellees, should be modified so as to tax the entire costs against Frank Duff Frazier, the father of the child, whose custody was here involved, mandate to issue in accordance with the order. It is so ordered.