LE BLANC, Justice.
 

 This habeas corpus proceeding originated in the Twentyrfourth Judicial District Court of this State in and for the Parish of Jefferson. It was brought in the name of the State of Louisiana on the relation of John Charles Girtman, individually, and for and in behalf o-f his minor child, John Charles Girtman, Jr.
 

 In his application for the writ, the relator avers that by a decree of the Circuit Court of the Eleventh Judicial Circuit of Florida in the County of Dade, entered on October 6, 1950, the said minor child, John Charles Girtman, Jr. was committed to his care, custody and control, for and during the period of the years that he should be attending school, subject to the right of the mother, who is made defendant in that proceeding, to visit the child at reasonable and convenient times. That the decree of that court was affirmed on appeal by the Supreme Court of Florida on June 8th, 1951, 53 So.2d 102, and that the relator’s legal domicile and that of the minor, who is now about ten years of age is in the County of Dade, State of Florida.
 

 He next avers that in compliance with the earnest request of the defendant, the child’s mother, and upon her assurance that she would return the child to him on December 31, 1951, he, on December 22d, 1951. sent the child for a visit with his
 
 *696
 
 mother during the Christmas Holidays, in the Parish of Jefferson in this state. That she did not return the child to him as promised but, in actual and legal bad faith, refused to return him and that she and her present husband continued to detain the child and to retain actual custody and possession of him, illegally refusing to return him, despite amicable demand.
 

 The District Judge issued an order making the writ of habeas corpus returnable on February 8, 1952, on which date, the defendants, the child’s mother, and her present husband, Dr. Greer Ricketson, who was also made a party defendant, filed exceptions of lis pendens, want of jurisdiction ratione material and no cause or right of action. On the same day they filed an answer under reservations of the exceptions and in their answer they allege that the relator and the defendant, Mrs. Ricketson, were divorced in the Eleventh Judicial Circuit Court of Florida on November 2d, 1945 by a judgment of that court in which she was granted the legal custody of the minor child, John Charles Girtman, Jr., issue of their marriage, with certain reservations in favor of the father. That she had the legal custody of the child until the later decree of that court on October 6, 1950 modifying the former decree of custody, at the time of the rendition of which decree, later affirmed by judgment of the Supreme Court of Florida, the legal domicile of the child was in the Parish of Jefferson, State of Louisiana. The respondents admit that on or about December 22, 1951, the relator sent the-child to visit his mother, one of the defendants, for the Christmas Holidays, paying the transportation and the necessary expenses of the trip to New Orleans. Further they aver that the respondent, Mrs. Ricketson, is neither in actual nor in legal bad faith but on the contrary is in actual and legal good faith because she is petitioning this court, the proper forum, to-determine the custody of said child; that, there has arisen subsequent changes affecting the welfare of the child and that the district court of Jefferson Parish has the power to consider all matters not properly presented to the Florida Court as well as all matters concerning the welfare of the child arising subsequent to the decree of the Florida Court and be in full accord with the Full Faith and Credit Clause of the federal Constitution.
 

 Answering further, in the alternative, respondents allege that should the district court of Jefferson Parish find the domicile of the child to be in the State of Florida, relator, father of the child, is not a fit and proper person to have care, custody and control of him, in that subsequent to October 1950 he has been guilty of excessive and abnormal use of alcoholic beverages to his own personal detriment and to the obvious detriment of the child and also guilty of failure to provide proper daily care and guardianship for the said child. They aver that the child is a ward of the district court
 
 *698
 
 of Jefferson Parish and is entitled to protection and control; that it is better for his physical and his moral welfare that he should remain with his respondent mother, who is a fit and proper person to have his custody, care and control.
 

 Upon hearing the rule and whatever evidence he permitted the parties to offer, the trial judge maintained the writ and rendered judgment in favor of the relator, and against the respondent, Mrs. Dorothy B. Ricketson, commanding that the child be at once released and restored to liberty and -turned over to the custody, care and keeping of the relator, his father. Upon being refused a suspensive appeal, respondent, through her counsel, at once gave notice that she would apply to this court for writs of certiorari and prohibition, which she did, and upon considering her application this court granted the writs with -a stay order. That is the manner in which the proceeding is presently before us.
 

 In order to properly consider the question at issue we find it necessary to relate the history of this litigation from the time of its origin in the State of Florida where both the relator, John Charles Girtman, and the respondent, Mrs. Dorothy B. Ricketson, were domiciled and were married in the City of Miami, in 1941. The child, issue of this marriage, and subject of this controversy, was born on February 8, 1942.
 

 In June 1945 the wife filed a bill for divorce against her husband in the Eleventh Judicial Circuit Court of the State of Florida and prayed for the permanent custody of the child. On November 2, 1945 at which time the ■ child was three years and nine months old1, a final decree of divorce was entered in that court in favor of the wife and in the decree there was a division of custody of the child between the parties. The decree provided that until the child should reach the age of six years the custody would be divided equally for a period of six months between them and thereafter the custody was awarded to-the mother for the nine months during which he would be at school and the father for the three months of vacation.
 

 After the judgment of divorce the father remarried and his mother was twice married. Her second marriage appears to have been a most unfortunate affair and soon ended in divorce. In September 1949 she married her present husband, Dr. Greer Ricketson who was then a medical student at Tulane University in New Orleans and eventually they established a home in the Metairie section of Jefferson Parish adjoining the City of New Orleans. During the period from 1945 to 1950, the wife’s health condition was extremely bad and she had to undergo several operations. Because of this and her resulting strait-ened financial circumstances she found it necessary to allow the child to spend a period of nearly two years with his father. After marrying Dr. Ricketson and establishing their home in Metairie, she made arrangements to enroll the child in a
 
 *700
 
 school for the year beginning September, 1950.
 

 However, in the meanwhile, the husband, on July 25, 1950, went into the Florida Court to seek an amendment and modification of the provisions of the final decree of divorce and an award of custody of the child in his favor.- The wife went to Florida and placed that proceeding at issue before the court. After hearing evidence the circuit judge in Florida, on' October 6, 1950, modified the original decree and awarded the custody of the child to the father during the school period of each year, and deferred a determination of the custody of the child for the vacation period reserving to the parties the right to be heard on that issue at the end of the school year. The trial judge seemed to have experienced much difficulty in choosing between the parents as he thought that both the father, who had established a new home after his 'remarriage, and the mother, who also had established a home with her husband in New Orleans, were both worthy and that the child would fare equally well with one as with the other. He seems to have resolved the question of making a choice on the testimony of the child himself, stating that the scales “tip ever so slightly in favor of the father, because as John Charles Girtman, Jr. testified, he is happy in the company of either parent, except he was tired of being moved around from place to place and from school to school.”
 

 The mother appealed this judgment to the Supreme Court of Florida where it was affirmed. See Ricketson v. Girtman, Fla., 53 So.2d 102.
 

 At Christmas time, 1950, the father sent the child to spend the holidays with his mother in Louisiana-. True to her promise to return him after the holidays she did so. Likewise, at Christmas time in 1951 the child was sent to visit with his mother but after having had him over the holidays she decided not to return him to his father in Florida because, as she alleged in a proceeding which she instituted in the district court of Jefferson Parish for a modification of the Florida decree of custody, from the appearance of the child and from his own statements, he was being neglected, and that condition had arisen since the modified order of the Florida Court was granted. This, she alleged, warranted her keeping the child with her in Louisiana.' This proceeding was instituted on January 2, 1952. In her petition in that suit she further alleged that she should have exclusive custody of the child because by reason of his excessive drinking of alcoholic beverages and his failure to provide daily care and guardianship for the child, the father was unfit. She obtained an order of custody of the child pendente lite but on trial on an exception to the jurisdiction of the court her suit was dismissed. It is presently pending on a devolutive appeal-in this court. Subsequently, on February 6, 1952, the father invoked the present habeas corpus proceeding, as already stated, in the 24th Ju
 
 *702
 
 dicial District Court for the Parish of Jefferson. We have already related the pleadings and the issues which were drawn in the district court and how the matter presently finds itself before this court.
 

 The plea of lis pendens filed on behalf of the respondent mother in the habeas corpus proceeding is based on the proposition that all of the issues presented in that proceeding are the same as those that are presented in the suit instituted by her in the district court .in the Parish of Jefferson on January 2, 1952, seeking to have that court grant her the exclusive custody of the child, which suit is presently on appeal before this court. The plea is so interwoven with the plea to the jurisdiction ratione materiae of that court, that the decision of one necessarily depends on the decision of the other. As we have stated before the plea was sustained in the former suit which is now pending on appeal before us. We believe, however, that in view of the conclusion which we have reached in the matter, we may well pretermit a discussion of the plea of lis pendens. For the purpose of the decision which we will render it may be assumed that at the time the father filed his suit to have the custody decree modified in the court in Florida, the child was domiciled in that state and that court was vested with jurisdiction over its custody.
 

 The trial judge did not assign written reasons when he ruled in favor of the relator in the habeas corpus proceeding, but his views are reflected at quite some length in the return which he made to this court in answer to the writ of certiorari. He seems to have been of the opinion, following a rule laid down in 31 C.J., § 6, p. 988, which he quotes that: “The courts of the state wherein the child legally resides should determine conflicting claims as to his custody, and the courts of another state are without power in the premises, and cannot obtain jurisdiction for such purpose over persons temporarily within the' state * See also 43 C.J.S., Infants, § 5, p. 52. In support of the rule the case of Lanning v. Gregory, 100 Tex. 310, 99 S.W. 542, 10 L.R.A.,N.S, 690, is cited to the effect that “where a child was in the lawful custody of his father, who was domiciled in Louisiana, the courts of Texas did not acquire jurisdiction of the child by reason of his temporary presence in that state, so as to authorize them to adjudge a change of the relation between the father and the child”, and "the relative rights of the father and mother to the custody of the child should be determined by the Louisiana courts.” The trial judge seems to have relied very strongly on this Lanning case indicating that the facts are very similar to the facts in this case.
 

 He seems also to have given some weight to the proposition that it was only in cases where it became necessary, as a police measure, that a court of another jurisdiction than that of the domicile of the child should intervene in matters of this kind. To this effect the case of Larson v. Larson, 190 Minn. 489, 252 N.W. 329, is cited.
 

 
 *704
 
 Entertaining those views the trial judge declined to hear testimony offered by the respondent mother to support the allegations of her answer that there had been a change in conditions affecting the welfare of the child since the modification of the custody decree by the Florida Court in October, 1950. The basis of his decision might be said to be the provision of our Federal Constitution, Article 4, Section 1, respecting the full faith and credit that is due by one state to the judgments of a foreign state, for he states that in the circumstances of this case, “maintaining the exception of lis pendens and dismissing the habeas corpus suit would have denied the faith and credit due the Florida judgment and denied Mr. Girtman recognition of his rights under it, while conferring upon Mrs. Ricketson such advantage as would have accrued to her from a suspensive appeal in the custody suit keeping in effect the ex parte pro forma order giving her the custody of the child pendente lite.”
 

 It appears to us that the case of the State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 905, 91 L.Ed. 1133, is one of, if not the leading case in the country on the issue that is here presented and we believe it to be controlling in this case. In his return made to this court, the respondent judge in commenting upon that case stated that as he understood it, “the New York Court had jurisdiction to determine the custody of the child, despite the Florida decree urged against it, because it was apparent that the Florida Court did not have jurisdiction and its decree was not entitled to faith and credit.” The Halvey case involved a habeas corpus proceeding which originated in the State of New York. After stating the facts which bear some resemblance to the facts in the case before us the court stated: “The custody decree (the one granted by the Florida Court) was not irrevocable and unchangeable; the Florida court had the power to modify it at all times. Under Florida law the ‘welfare of the child’ is the ‘chief consideration’ in shaping the custody decree or in subsequently modifying or changing it. Frazier v. Frazier, 109 Fla. 164, 169, 147 So. 464, 466; See Phillips v. Phillips, 153 Fla. 133, 134, 135, 13 So.2d 922, 923. But ‘the inherent rights of parents to enjoy the society and association of their offspring, with reasonable opportunity to impress upon them a father’s or mother’s love and affection in their upbringing, must be regarded as being of an equally important, if not controlling, consideration in adjusting the right of custody as between parents in ordinary cases.’ Frazier v. Frazier, 109 Fla. at page 169, 147 So. [464] at page 466. Facts which have arisen since the original decree are one basis for modification of the custody decree. Frazier v. Frazier, 109 Fla. at page 168, 147 So. at page 464; Jones v. Jones, 156 Fla. 524, 23 So.2d 623, 625. But the power is not so restricted. It was held in Meadows v. Meadows, 78 Fla. 576, 83 So. 392, 393, that ‘the proper custody of the minor child is a
 
 *706
 
 proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing,
 
 if such facts were not presented or considered at a former hearing.’
 
 (Italics added.) Or, as stated in Frazier v. Frazier, 109 Fla. at page 168, 147 So. [464] at page 465, a custody decree ‘is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the court, and then only for the welfare of the child.’ The result is that custody decrees of Florida courts are ordinarily not res judicata either in Florida or elsewhere, except as to the facts before the court at the time of judgment. Minick v. Minick, 111 Fla. 469, 490, 491, 149 So. 483, 492. * * *
 

 “So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do. Article IV, § 1 of the Constitution provides that ‘Full Faith a.nd Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.’ Congress by the Act of May 26, 1790, c. 11, as amended, Rev.Stat. § 905, 28 U.S.C. § 687, 28 U.S.C.A. § 687, [now § 1738], declared that judgments ‘shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken.’ The general rule is that this command requires the judgment of a sister State to be given full, not partial, credit in the State of the forum. See Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518; Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273. But a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. See Reynolds v. Stockton, 140 U.S. 254, 264, 11 S.Ct. 773, 775, 35 L.Ed. 464. If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause. See Thompson v. Whitman, 18 Wall. 457, [85 U.S. 457] 21 L.Ed. 897; Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556 [90 L.Ed. 635], And if the amount payable under a decree —as in the case of a judgment for alimony —is discretionary with the court which rendered it, full faith and credit does not protect the judgment. Sistare v. Sistare, 218 U.S. 1, 17, 30 S.Ct. 682, 686, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, [911] 20 Ann.Cas. 1061. Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered (Cf. Williams v. North Carolina, 325 U.S. 226, 230, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577,
 
 *708
 
 [1581] 157 A.L.R. 1366, it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.
 

 “In
 
 this case the New York court, having the child and both parents before it, had a full hearing and determined that the welfare of the child and the interests of the father warranted a modification of the custody decree. It is not shown that the New York court in. modifying the Florida decree exceeded the limits permitted under Florida law. There is therefore a failure of proof that the Florida decree received less credit1 in New York than it had in Florida.”
 

 Whilst it is true that the court did not find it necessary to consider the question as to whether Florida at the time of original decree had jurisdiction over the child, the concurring opinion of one of the justices seems to leave no doubt on the point that the court of the state in which the child presently finds itself has the right to assume jurisdiction, despite a valid custodial decree of a foreign state, on the basis that the child’s welfare must be the controlling consideration and there have been changed conditions affecting its welfare which may call for a change in its custodial care.
 

 The case of Lanning v. Gregory, supra, on which the respondent judge seems to rely was a Texas case which had been overruled as will appear from the later case of Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 877, 4 A.L.R. 2d 1. In this latter case the'Supreme Court of Texas had this to say: “In Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293, this court adopted the opinion of the Commission of Appeals which in turn clearly rejected the theory that our courts must decline jurisdiction to award custody whenever it appears that the legal domicile, of the child is in another state. In that case the child was present in Texas in the custody of its mother, a Texas resident, but
 
 its
 
 legal domicile was clearly in Missouri, where the father resided and had custody about three-fourths of each year under an apparently valid Missouri decree. The court evidently thought then, as we think now, that the sounder rule on the point emanates from [Chief] Justice Gaines in Campbell v. Stover, 101 Tex. 82, 104 S.W. 1047; that Campbell v. Stover overruled anything to the contrary in the slightly earlier case of Lanning v. Gregory, 100 Tex. 310, 99 S.W. 542, 10 L.R.A.,N.S., 690, 123 Am.St.Rep. 809, and should prevail over any contrary doctrine deducible from the later case of Milner v. Gatlin, Tex.Com.App., holding approved by Supreme Court, 261 S.W. 1003. Our recent decision in Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551, mentioned by the Court of Civil Appeals, does not conflict with Goldsmith v. Salkey, supra. The Peacock case held that the child’s legal domicile was in Texas, and that the Texas court had custody jurisdiction despite the fact that the child was physically beyond the state at the time of the proceedings.
 
 So,
 
 
 *710
 

 whatever doubt may have once existed on the
 
 subject,
 
 the rule now is that technical legal domicile of the child m this state is not a sine qtia non of child custody jurisdiction on the part of our
 
 courts(Emphasis supplied.) Clearly, therefore the respondent judge' was wrong in following the rule of the Lanning case.
 

 The case of Wicks v. Cox, supra, forms the basis of a very lengthy annotation, .on the subject with which we are here concerned, in 4 A.L.R. 2d 1. The annotation contains a complete discussion of the jurisprudence and the history of-the development of the law in regard to custody cases.
 

 In this annotation at page 41, section 24 it is stated: “With a few exceptions (see cases under subhead ‘Opposing view’, infra) it is held that even in the face of an admittedly valid existing award of custody rendered by a competent court of -a foreign state, a court will nonetheless have jurisdiction. to make a custody award on behalf of the state as parens patriae, notwithstanding that the child in dispute is domiciled without the state and is only in the state for the time being.” The annotation then lists ten states and the District of Columbia and England which follow this rule. And it further states: “The great majority of the courts give such foreign decree full faith and credit (see annotation in 20 A.L.R. 815, supplemented in
 
 72
 
 A.L.R. 441, 116 A.L.R. 1299, and 160 A.L.R. 400) but limit its binding effect as of.the date of its rendition and correspondingly hold that they have jurisdiction to make an award of custody provided changed conditions are shown to exist that in the interest of the child’s welfare justify an award changing the custody.”
 

 The decision of this court in Person v. Person, 172 La. 740, 135 So. 225, is not in conflict with that doctrine. The same issue was not involved. There is no doubt but that once the legal domicile of the child has been established by the court of one State, the question of his custody can be re-examined by that court if any changes in his condition present themselves and a change of custody is found necessary for his best interest and welfare. That does not mean however that if by reason of some circumstance, the child is found in a State other than that of such domicile, in custody of one of the parents, such as is the child in this case, the courts of that State do not have jurisdiction-to make the same sort of investigation regarding any changes of conditions which may lead to a change of custody for his better welfare. The court, no matter of which State, having his person before it, has the right, and even the duty according to some cases, under the' doctrine of parens patriae, to act for the best interest of the child. The basic principle on which jurisdiction is assumed in such cases is the welfare of society in general and primarily as evidenced hy the welfare of the child. See Wicks v. Cox, supra, and Finlay v. Finlay, 240 N.Y. 429, 148 N. E. 624, 40 A.L.R. 937.
 

 
 *712
 
 Any statement found in Person v. Person, supra, which may be regarded as being in conflict, should be considered as dicta, as it was not necessary to the decision of the case. It is significant to note that in stating such dicta, the cases of Lanning v. Gregory, supra, and Milner v. Gatlin, 139 Ga. 109,
 
 76
 
 S.E. 860, are cited with apparent approval. The first of these cases as we have already seen was expressly overruled by the same court which had decided it. See Wicks v. Cox, supra. The Milner case cited is the case of Milner v. Gatlin, 139 Ga. 109,
 
 76 S.E. 860,
 
 but we note that in its statement this court seemed to have relied on certain language of the Supreme Court of Texas when a contest over the custody of the same child was before the courts of that state. See Milner v. Gatlin, Tex.Com.App., 261 S.W. 1003. It is significant to again observe that the rule announced in that case was also rejected by the Texas Supreme Court. See Wicks v. Cox, supra.
 

 We conclude therefore that Person v. Person, supra, is not authority on the issue presented in this procee'ding.
 

 In reproducing the quotation from 31 C. J. 988, § 6, found in the return of the respondent judge we purposely omitted the following sentence which, strange to say, is incorporated in his quotation. We did so to emphasize it and to later express our wonder whether he gave it any consideration since it so clearly qualifies the rule stated in the sentence immediately preceding it. It reads as follows:
 
 "However, if the child is actually within the jurisdiction of the court, although his legal domicile is elsewhere, the court may determine conflicting claims as to his custody.”
 
 See also 43 C.J.S., Infants, § 5. (Emphasis supplied.) Here then from the very authority. cited in his return we find a modification of the rule apparently relied upon by the respondent judge and which modification supports the ruling of the vast majority of the courts of this country.
 

 It is obvious therefore in the light of such decisions of our sister states, including Florida, and of the United States Supreme Court, that the trial judge should have recognized his jurisdiction to determine whether, in the light of changed circumstances occurring since the Florida decree, the welfare of the child would be better served by awarding the custody of said child to the mother.
 

 Accordingly, we conclude, the trial judge erred in excluding the depositions of witnesses for the wife from the state of Florida, the testimony of the character witnesses for the wife and the testimony of the minor, who it is shown from the record, was permitted to testify in the Florida proceeding a little over a year before, and whose testimony, as we have pointed out, was accorded great weight by the Florida judge in his decision modifying the divorce decree.
 

 The case therefore should be remanded to the district court for the purpose of re
 
 *714
 
 ceiving whatever testimony may be offered regarding changed conditions arising subsequent to the Florida decree of modification rendered on October 6, 1950.
 

 For the reasons stated it is ordered that the writ of certiorari and prohibition herein granted be made peremptory; that the judgment of the district court be and the same is hereby reversed and set aside and it is further ordered that the case be remanded to the district court to be further proceeded with in accordance with the views herein expressed.