961 So.2d 967 (2007)
Jessica E. SAN MARCO, Appellant,
v.
Anthony SAN MARCO, Appellee.
No. 4D06-3326.
District Court of Appeal of Florida, Fourth District.
April 25, 2007.
*968 Kenneth M. Kaplan, Miami, for appellant.
John S. Andrews of Andrews & Galatis, Fort Lauderdale, for appellee.
POLEN, J.
Appellant Jessica E. San Marco appeals a final judgment on supplemental petitions for modification of child visitation and/or custody in favor of Appellee, Anthony San Marco. The parties in this case were formerly married and had one child, A.M. An uncontested final judgment of dissolution of marriage was entered on September 2, 2003. As part of the agreement, the parties agreed that A.M.'s primary physical residence would be with Jessica, parental responsibility and visitation to be shared with Anthony. The parties also agreed that Jessica could relocate her residence without court permission, as long as she stayed within Dade, Broward or Palm Beach counties. Anthony was required to pay child support to Jessica. As a result of the modification at issue in this case, Anthony was awarded primary residential custody of the child and his child support obligation was terminated. We affirm, but write to address Jessica's arguments below.
Following the dissolution of marriage, Jessica filed a supplemental petition to modify custody and/or other relief. Jessica alleged that Anthony was not following the visitation schedule by failing to bring A.M. home at the arranged times and that this was causing A.M. to miss school. Jessica asked the court to limit Anthony's visitation rights to every other weekend. Anthony responded by filing a counter-petition to modify visitation. Anthony alleged that Jessica had breached the settlement agreement by: (1) failing to provide A.M. with medical care and attention; (2) failing to have A.M. vaccinated with the chicken pox vaccine, resulting in her contraction of chicken pox; (3) failing to have A.M. vaccinated as per Broward County health ordinances; (4) failing to provide him with the correct address for A.M.'s residence; and (5) moving repeatedly since the parties' divorce. Anthony alleged there had been a substantial change in circumstances since the parties' divorce and asked that he be awarded primary physical custody of A.M. Anthony had remarried after the divorce and alleged he could provide a more stable family environment.
The trial court held a hearing on the parties' motions. During the hearing, John Andrews, Anthony's counsel, questioned Jessica extensively about her care of A.M. Jessica testified that since the parties' divorce she had taken A.M. to the pediatrician for treatment of an ear infection and for her routine shots and a physical. Jessica would sometimes wait until Anthony picked A.M. up and have him take her to the doctor, as A.M. was listed on Anthony's wife's insurance. Jessica alleged she did not have access to an insurance card. Jessica testified that Anthony had refused to give her the insurance information for some time. Jessica also asserted that Anthony's new wife was listed as A.M.'s mother at the doctor's office. Anthony admitted his wife was listed as A.M.'s stepmother at the doctor's office, but not as her mother.
Jessica admitted to moving six times in the past four years, but asserted it was in the best interest of A.M. and that she was *969 forced to move due to financial difficulties. Jessica agreed that Anthony's family circumstances had changed since the parties' divorce, but did not necessarily believe Anthony lived in a better environment than she. Jessica testified that A.M. had been vaccinated but admitted "[s]he had missed a couple of visits from time to time." Jessica did not have A.M. vaccinated against chicken pox because she had "personal concerns" about the vaccination. Jessica agreed she did not take A.M. to the dentist to deal with an injured tooth but asserted this was because she did not have the insurance card or insurance information.
Anthony testified that he had picked A.M. up on several occasions and due to problems such as an ear infection or pinkeye had to take her directly to the doctor's office. Anthony asserted that Jessica had lied about getting A.M. vaccinated. Anthony also asserted he was the one to take Jessica to the dentist when she injured her tooth and it began to turn black. Anthony knew of only one time since the divorce when Jessica had taken A.M. to the doctor.
Anthony had a stable job, had been remarried for two-and-a-half years and had twin daughters. Anthony testified that his neighborhood and home were a better, more family-oriented environment than Jessica's. Anthony pointed out that A.M. was starting kindergarten and if she lived with Anthony, either he or his wife would be home when A.M. got out of school. If she lived with Jessica, Anthony asserted she would have to go to daycare, although Jessica disagreed with this assertion. Anthony agreed that the schools in his neighborhood and Jessica's neighborhood were both "A" schools.
Mindy Pelliccio, a pediatric nurse, testified on Anthony's behalf. Pelliccio testified about A.M.'s vaccinations, or lack thereof. A.M. had missed her measles, mumps and rubella vaccines and her chicken pox and pneumococcal vaccines. Pelliccio testified A.M.'s multiple ear infections and contraction of chicken pox could be traced to this lack of vaccination. Pelliccio agreed that some parents did not want to get their children vaccinated but stated these parents usually go through a process with the county to sign forms and to express the reasons why they do not want their child vaccinated. Pelliccio did not believe there was any justifiable reason not to vaccinate a child. Pelliccio had not heard of any virus associated with a chicken pox vaccination or the onset of autism due to the chicken pox vaccination.
Andrea Windsor, Anthony's new wife, also testified at the hearing. Andrea was a registered nurse. Since being married, Anthony had gotten a steady job, the two had bought a house in Coral Springs, and they had gotten insurance coverage for A.M. Andrea confirmed there had been several times A.M. needed immediate medical attention when they picked her up from Jessica. Andrea denied withholding access to insurance information and stated the insurance card was on file at the pediatrician's office. Andrea also denied that she was listed as the mother and stated Jessica was listed as the mother, both at the doctor's office and in the insurance file.
The trial court made a number of findings in its final order. The trial court found: (1) Anthony had taken A.M. to the doctor or dentist on more than ten occasions while Jessica had taken her once; (2) Jessica had not provided A.M. with appropriate medical care by refusing to have her inoculated and by failing to keep her vaccinations current; (3) there was more structure in Anthony's home and A.M. would have her own room and bathroom there; (4) if A.M. lived with Anthony she would not have to be in aftercare following *970 school; (5) due to Jessica's frequent moves, A.M. would likely have a more stable school environment by living with Anthony; (6) Anthony had "a superior capacity and disposition to provide the child with medical care"; and (7) Jessica's frequent moves resulted in A.M. not having a stable, satisfactory environment. The trial court determined there had been a substantial and material change of circumstances since the parties' divorce and it was in A.M.'s best interest to reside with Anthony.
On appellate review, an order modifying custody has a presumption of correctness and will not be disturbed absent a showing of abuse of discretion. Wade v. Hirschman, 903 So.2d 928, 935 (Fla.2005).
A final divorce decree providing for the custody of a child can be materially modified only if (1) there are facts concerning the welfare of the child that the court did not know at the time the decree was entered, or (2) there has been a change in circumstances shown to have arisen since the decree.
Id. at 932. "To modify such judgments, the trial court must decide whether there is a `factual basis sufficient to show that conditions have become materially altered since the entry of the previous decree.'" Id. (quoting Frazier v. Frazier, 109 Fla. 164, 147 So. 464, 467 (1933)). "The degree of change in the conditions and circumstances since the date of the previous decree must be of a substantial character." Wade, 903 So.2d at 932. The movant must also show "that the best interests of the child will be supported by such modification." Id. at 933.
Jessica argues that all of the trial court's findings regarding changed circumstances were foreseeable at the time of the final dissolution of marriage and do not equal material changes. The trial court's modification of primary residential custody is based on three primary findings: (1) Jessica did not provide adequate medical care to A.M.; (2) Jessica's frequent moves made Anthony's home environment a better, more stable place for A.M.; and (3) the change in Anthony's circumstances made him a better candidate for A.M.'s primary residence.
We find the trial court did not abuse its discretion in determining that there had been a material change in circumstances since the parties' divorce. In affirming the trial court's decision, we note that this is a very difficult case. The evidence showed that neither Jessica nor Anthony is a bad parent and both provided a loving environment for her. However, the trial court considered all the factors in making this decision and the evidence at trial clearly supported a finding that Jessica had not provided A.M. with adequate medical attention. Testimony revealed that on numerous occasions A.M. required immediate medical attention when Anthony picked her up. While Jessica admitted she sometimes waited to have Anthony take A.M. to the doctor, she argued this was because she did not have access to A.M.'s insurance information. Regardless of whether this contention is true, this did not absolve her of the responsibility to provide A.M. with medical care. At the time the parties divorced, neither party had insurance coverage, and the agreement stated they would both divide the cost of medical care.
Further, the evidence at trial supported the trial court's conclusion that Anthony would provide a more stable environment than Jessica, given her frequent moves and given his remarriage and ownership of a permanent home. In short, the trial court was in a much better position to determine that the totality of these factors constituted a substantial, material, unforeseen change in circumstances warranting *971 modification. While "[f]requent moves, a less stable lifestyle, [and] even poor relationship choices standing alone may not support a custody modification where the residential parent has moved out of necessity, has subsequently established a stable home, and the child's needs have always been met," this was not the case here. Sullivan v. Sullivan, 736 So.2d 103, 105 (Fla. 4th DCA 1999).
We affirm the trial court's finding of changed circumstances and its modification of custody.
STEVENSON, J., concurs.
TAYLOR, J., dissents with opinion.
TAYLOR, J., dissenting.
I respectfully dissent and would reverse the trial court's modification order transferring primary residential custody of the parties' five-year-old daughter from the former wife to the former husband. I believe the trial court abused its discretion in modifying the final judgment because the former husband failed to meet his burden of showing a substantial and material change of circumstances since the original custody disposition and that a change of custody would promote the best interest of the child.
The trial court transferred physical custody of the minor child to the former husband essentially because it determined that the former husband could provide better medical care and a more stable home for her. The court determined that the former wife failed to provide adequate medical care for the child because (1) she failed to have her vaccinated for chicken pox and the child later contracted chicken pox, and (2) the former wife did not take the child for doctor or dentist visits as frequently as did the former husband. The court also concluded that because the former wife had moved several times within the four-year period since the divorce, the former husband, who had remarried and settled into a home in a good neighborhood, could provide a more stable environment for the child.
As we held in Sullivan v. Sullivan, 736 So.2d 103, 105 (Fla. 4th DCA 1999) (citing Bartolotta v. Bartolotta, 687 So.2d 1385 (Fla. 4th DCA 1997)), "[a] petitioning parent must overcome an extraordinary burden to receive a post-judgment custody modification. A trial court has far less discretion in modifying a custody order than it enjoys in making an original determination. The husband had to prove that circumstances had substantially and materially changed since the final judgment and that a change of custody would promote the best interests of the child." This requirement for modifying child custody was reiterated in Wade v. Hirschman, 903 So.2d 928, 931 (Fla.2005) (adopting the substantial change test in Cooper v. Gress, 854 So.2d 262 (Fla. 1st DCA 2003)). In Wade, the Florida Supreme Court stressed that res judicata attached to the parties' original final divorce judgment, and that the initial child custody determination contained in the judgment could not be modified without satisfying the substantial change test. Id. at 932-33.
Here, the fact that the former husband took the child for medical and dental visits more often than did the former wife was not a "change in circumstances" that was not contemplated at the time of the final judgment. The final judgment and marital separation agreement made both parents equally responsible for the child's medical and dental needs. At the time of the divorce, the wife had limited income and financial resources; the parties knew that the former wife would be dependent upon the former husband for child support and that she would have difficulty providing for the minor child's medical and dental needs *972 without his financial assistance. Neither party possessed health insurance at the time of the final judgment, but the former husband was later able to get insurance coverage for the child through his present wife's health insurance plan. The former husband failed, however, to provide the former wife with an insurance card and equal access to insurance information to allow her to secure medical attention for the child on her own. As a result, the husband often took the child for medical or dental appointments during his visitation period with the child. The evidence did not show that any of these medical or dental visits were for life-threatening or uncommon childhood ailments.
The trial court also concluded that the former wife failed to provide the child with appropriate medical care by refusing to get the child inoculated for chicken pox. The child contracted chicken pox when she was four years old. However, the former wife's decision not to get the child immunized against chicken pox was made before the child's twelve-month birthday (when the immunization would have been given) and pre-dated entry of the final judgment, as well as the marital settlement agreement. Thus, this decision did not constitute a change in circumstances. Further, the former wife's decision not to obtain the vaccine did not warrant a finding of medical neglect justifying a change in custody. The former wife testified that she had concerns about the risks and dangers surrounding the chicken pox vaccine and chose not to get the vaccine for valid reasons. The former husband did not contradict her concerns or refute recent research indicating the benefits of allowing children to be exposed to the chicken pox disease itself. Further, testimony was presented that the Broward County School Board does not require this vaccine for students if a parent elects not to get it.
As to the former wife's frequent moves, the former wife, who represented herself at the modification hearing, conceded that she had changed residences six times in the four years since the divorce. She testified, however, that she did so for the child's best interest and that she now lives in an area close to a park and a school. The former husband offered no evidence whatsoever to contradict her testimony or to show that the child suffered any deprivation or manifested any behavioral or physical changes as a result of the changes in residence. In Sullivan, we stated that frequent moves and a less stable lifestyle alone may not support a custody modification where the residential parent has moved out of necessity, has subsequently established a stable home, and the child's needs have been met. 736 So.2d at 105.
Here, the trial court contrasted the former wife's multiple moves with the former husband's remarriage and settlement with his new wife and children into a large home in an affluent neighborhood close to "A" rated schools. Placing great emphasis on the former husband's superior financial ability to provide the child with medical care and a stable home, the court transferred physical custody of the child to the former husband. The court did this despite finding that, in every other aspect, the parties have an equal capacity and disposition to provide the child with her needs. In my view, this was an abuse of discretion. "[T]he relative stability of a parent's home environment is itself inadequate to constitute a substantial and material change" in circumstances that would warrant modification of child custody. Bartolotta v. Bartolotta, 687 So.2d 1385, 1387 (Fla. 4th DCA 1997).
In sum, the court's findings in this case are insufficient to justify modification of child custody. The former husband failed to meet his heavy burden of proving that *973 there has been a substantial and material change in circumstances since the final judgment and that removing physical custody of the daughter from the former wife to the former husband is in the best interest of the minor child. I would therefore reverse the modification order and instruct the trial court to immediately return the child to the mother as her primary custodial parent, in accordance with the original custody order.