BLANCHE, Judge.
Plaintiff, Harold A. Tennyson, on December 7, 1970, filed a petition for a writ of habeas corpus directed to his former wife, Jane Kinsey Tennyson, in an attempt to recover the physical custody of his five year old son, John Gentry Tennyson. Plaintiff’s right to custody was based on a judgment of the Court of Domestic Relations No. Two of Harris County, Texas, which had awarded plaintiff custody of his son on November 4, 1970. The defendant answered the Louisiana writ and in the alternative made application for a redetermi-nation of custody. The Louisiana trial court discharged the writ and further found that conditions had changed between *89 November 4, 1970, the date on which plaintiff had been awarded custody by virtue of the Texas judgment, and December 7, 1970, the date of filing the writ in Louisiana so that the best interests of the child required that his custody be given to the defendant.
From this judgment the plaintiff has appealed, assigning as error (1) the failure-of the trial court to give full faith and credit to the Texas judgment which thirty-three days prior thereto had made a judicial determination that plaintiff was entitled to custody, and (2) the trial court’s finding a change in conditions sufficient to warrant a change in custody. We reverse.
The record reveals that there has been extensive litigation between the parties over the custody of their minor son. Since their divorce was granted by the Texas court on April 20, 1965, on four different occasions over the succeeding five years plaintiff has filed actions seeking an enlargement of visitation privileges. Finally, on June 1, 1970, plaintiff brought suit in Texas for the exclusive custody of his son. Service of citation was had upon defendant and in response thereto, she filed an answer signed by her counsel thereby joining issue. After filing the foregoing answer, defendant then left the State of Texas and moved to Slidell, Louisiana, taking her minor son with her. Her removal of the child from the jurisdiction of the court was without the knowledge of plaintiff and in violation of a previous court order prohibiting either of the parties from removing the child permanently from the jurisdiction of the court without first obtaining permission from the court. Subsequently, the matter came on for trial in the Harris County court before the same judge who had presided over the previous litigation between the parties, and though defendant did not make a personal appearance, her counsel was notified and he appeared at trial. The court, after due proceedings had, thereafter rendered judgment granting to plaintiff the custody of his son, and it is this judgment which plaintiff contends should be accorded full faith and credit by the State of Louisiana under the United States Constitution.
The degree of dignity which we and other jurisdictions accord the judgment of a sister state was described by the present Justice Tate of our Supreme Court in Legé v. Legé, 228 So.2d 202 (La.App. 3rd Cir. 1969), as being “conflicting and confused.” In Legé as in the instant case, the mother removed the child from the jurisdiction of another court in contempt of its lawful order, yet our court assumed jurisdiction on the basis of serving the “best welfare of the child.” The limited respect paid the Alabama judgment in that case was the recognition that it had “continuing jurisdiction” to award custody to the father, thus placing the burden on the mother in our court to show the “change of custody from the father to her is in the best interest of the children.” It is fairly obvious that the faith accorded the Alabama judgment in Legé was something less than full. It is less than full because it ignores the fact that the mother’s presence within the jurisdiction is in contempt of a lawful order of the Alabama court and it amounts to usurpation of jurisdiction over a matter which the Alabama court was probably more competent to decide. Additionally, it accords a successful litigant in another jurisdiction something less than equal protection of the law, as it places the burden and expense on him to travel with his witnesses from one state to another to rebut evidence that he is no longer fit to have the custody of his child. If the orderly processes of law sought to be served by the full faith and credit clause of the United States Constitution are fully observed, such a case should be returned to the jurisdiction whence it came.
However strong our inclination to conclude that complete full faith and credit demands that the defendant be obliged to return to Texas to prove a change in conditions, our Supreme Court in State ex rel. Girtman v. Ricketson, 221 La. 691, 60 So. *90 2d 88 (1952), has decided otherwise. There the Court considered a case which had its origin in the State of Florida. After a contradictory hearing before a Circuit Judge in Florida, the court awarded the custody of the child to the father during the school period of each year and deferred a custody determination for the vacation period, reserving to the parties a right to be heard on that issue at the end of the school year. The mother appealed this judgment to the Supreme Court of Florida where it was affirmed. Thereafter, the father let the son visit with his mother during the Christmas season, and while he was on this visit the mother made a determination that the father was no longer a fit person to have the custody of their son and refused to return him. The father brought a habeas corpus proceeding to recover his son. The trial judge refused to hear testimony by the mother to support her allegations of changed conditions. Our court ordered the case remanded with the instruction that the trial judge should have “recognized his jurisdiction to determine whether, in the light of changed circumstances occurring since the Florida decree, the welfare of the child would be better served by awarding the custody of said child to the mother.” (State v. Ricketson, 60 So.2d at 95) Thus, in effect, the Court established a precedent which has been consistently followed thereafter of allowing a habeas corpus proceeding to be converted into a custody hearing. See Emery v. Emery, 223 So.2d 680 (La.App. 4th Cir. 1969).[1]
The Texas judgment is entitled to recognition by our courts since it was issued after personal service on the appellee, who was present with her child in the State of Texas at the time of service and who made a general appearance therein through her attorney. The recognition which we give it is that it was res judicata as to the question of the best interest of the child at the time of its rendition on November 4, 1970.
We next consider whether the ap-pellee-mother carried the burden of proof to show that a change in conditions had occurred' since' the appellant-father was awarded the custody of his child so as to justify modification of the Texas judgment. Inasmuch as appellant had never had the child in his possession since the Texas judgment, there could hardly have been any change of conditions or circumstances insofar as the father’s custody was concertned. Appellant’s witnesses which he had to bring from Texas all testified to his good character. The trial judge, though at a distinct disadvantage because he had never heard of the case before, found a change in conditions insofar as appellee was concerned, since[1] she had obtained a job after moving to Slidell and her mother had further moved from Texas to help her care for her children. However, she had a job in Texas and her mother was helping her with her children there, also. The trial judge likewise found a change as far as appellant was concerned. We quote from his opinion concerning this issue as follows:
“As far as the father is concerned, his witnesses testify as to the stability of his character prior to November 4, 1970. However, two occurrences in this parish since November 4, 1970 indicate a *91 change that would be detrimental to the child. First, Mr. Tennyson located his son in Slidell, and rather than applying to the Court for proper relief he, along with a private detective, grabbed the child while it was playing in its mother’s yard in Slidell and fled with it. The child was playing with his twelve year old step-sister, and was pulled from her grasp while she was trying to keep him from being taken, an obviously emotional experience for both children. Mr. Tennyson was later apprehended in Mississippi with the child.
“Secondly, Mr. Tennyson created a disturbance during a recess when the case was called for trial in December resulting in specific orders having to be given by the Court before the child could be taken to lunch.” (Reasons for Judgment, Record, p. 14)
We regard the foregoing observations by the trial judge as tenuous and not supportive of his conclusion that such a change in circumstances had occurred so that a continuation of the father’s custody would be inimical or detrimental to the child’s welfare. The two isolated incidents of impropriety on the part of the father deal primarily with the heat and passion engendered by the lengthy legal controversy and do not bear substantially on the parental qualities of appellant and his continuing ability to provide a proper and suitable environment for the rearing of the child. Moreover, his provocation is understandable considering that he had a legal right to the custody of his child.
For the above and foregoing reasons, the judgment of the trial court is reversed, and the writ of habeas corpus is hereby made peremptory and the defendant, Jane Kinsey Tennyson, is hereby ordered to deliver the custody of the minor, John Gentry Tennyson, to plaintiff, Harold A. Tennyson, forthwith[2] All costs are to be paid by defendant-appellee.
Reversed and rendered.

. Professor Robert A. Pascal, in commenting on the Emery case, observed in 31 La.L.Rev. 317-318:
“ * * * Inasmuch as civil habeas corpus addresses itself to the authority of the respondent to detain another, and the respondent had no such authority under the valid Arkansas judgment, the child should have been returned to her father’s custody without other proceedings. * * * Decisions like Emery * * * do more to encourage inter-parental piracy of children than to promote stability in lawfully declared rights.”
Professor Pascal then goes on to say that this is not to say that a child physically in Louisiana who proves to be neglected, abandoned or delinquent might not be taken from whosoever has custody and placed in the care of another.

. We realize, of course, that the effectiveness of the foregoing order is entirely dependent on whether the defendant-appel-lee remains within the jurisdiction of the court and does not leave with the child to another jurisdiction where another custody determination may be made by another court.