677 So.2d 885 (1996)
Joanne SKIRKO, Appellant,
v.
Richard SKIRKO, Appellee.
No. 95-2184.
District Court of Appeal of Florida, Third District.
June 26, 1996.
Rehearing Denied August 28, 1996.
*886 Charlotte E. Karlan; Scott M. Bernstein, Miami, for appellant.
Marc H. Brawer, Fort Lauderdale, for appellee.
Before BARKDULL, JORGENSON and GODERICH, JJ.
PER CURIAM.
In a post-dissolution of marriage proceeding, the former wife, Joanne Skirko, appeals from a final order granting primary residential custody of the parties' minor child to the former husband and from the denial of her motion for a new trial and for rehearing. We affirm.
After a two-year marriage, the parties were divorced by a final judgment of dissolution of marriage entered by the Superior Court of Gwinnett County, Georgia. The Georgia decree granted the parties "joint custody" of their eighteen-month-old son. The decree provided that the husband would have custody of the child from January 2nd through June 2nd of each year, while the wife would have custody from June 2nd through January 2nd. The decree also granted the husband an additional two weeks of visitation during the wife's period of custody and provided other visitation rights for both parties, including but not limited to, alternate weekend visitation.
At the time of the parties' divorce and of the original custody determination, the husband resided in Dade County, Florida, and worked as a United States Customs Agent, while the wife lived in Atlanta, Georgia, and worked as a pilot for Eastern Airlines. Soon after the final judgment was entered, Eastern Airlines went out of business, and the wife lost her job. Because she had substantial difficulty finding employment as a pilot, she decided to move to New Jersey to live with her mother and to manage an apartment building that her mother owned. Consequently, the former wife petitioned the Georgia court for a modification of its final judgment alleging that her planned move to New Jersey was a material change in circumstances that would affect the welfare of their child. In this motion, she sought primary residential custody of the child with liberal visitation rights for the former husband. The Georgia court entered an order denying the former wife's request and finding that it would be in the best interests of the child to continue "joint custody" as described in the original decree. The Georgia court, however, did eliminate alternate weekend visitation for both parents and, instead, provided each parent with one weekend of visitation per month while the child was in the other parent's custody.
Immediately thereafter, the former wife moved to New Jersey. While in New Jersey, she found employment as a pilot with Mark Air Express in Anchorage, Alaska. The job allowed her to fly during the day and spend the evenings with their son.
In December 1991, in Dade County, Florida, the husband filed a petition to domesticate *887 and modify the Georgia court order alleging that a substantial change in circumstances occurred when the former wife, in an attempt to thwart the husband's visitation, moved to Alaska. He further alleged that the former wife was not adequately providing for the basic needs of the child. The former wife counter-petitioned for modification alleging that a substantial change in circumstances had occurred because the child was approaching school age. Therefore, she sought to have the husband's uninterrupted visitation shifted to the summer months to accommodate a standard school schedule.
Subsequently, the former wife was laid off from Mark Air Express. She then took a job at her son's pre-school and began taking classes to earn a teaching degree. She expected to have full-time employment as a teacher by September 1996.
Throughout 1994, on six different days, the trial court heard testimony regarding custody. In May 1995, the trial court entered a final judgment wherein it made findings of fact in accordance with the statutory factors that are normally used for making an initial custody determination. § 61.13(3), Fla.Stat. (1995). Based on these findings, the trial court granted primary residential custody of the parties' child to the husband. Subsequently, the wife's motion for a new trial and for rehearing were denied, and her appeal follows.
The wife contends that "[w]hen considering a petition for modification of custody, the [trial] court does not have the same degree of discretion as it does in entering the original decree," Stricklin v. Stricklin, 383 So.2d 1183, 1184 (Fla. 5th DCA 1980), and that therefore, the trial court erred by conducting a review of custody as if it was an initial custody determination. § 61.13(3), Fla. Stat. (1995). Specifically, the wife argues that, when conducting the modification hearing, the Florida court should have considered her the primary residential parent of the child since the definition of "legal custodian," pursuant to the Georgia Statutes, states that "[w]here custody of a child is shared by two or more persons or where the time of visitation exceeds the time of custody, that person who has the majority of time of custody or visitation shall be the legal custodian." GA. CODE ANN. § 19-9-22(2) (1995). Based on this limited set of circumstances, we disagree.
We are not persuaded by the wife's argument that, under Georgia law, she should be considered the primary residential parent. First, a review of the Georgia court order, on it face, plainly shows that the Georgia court specifically awarded the parties "joint custody" of their minor child with an almost even division of custody, five-and-a-half months to the husband and six-and-a-half months to the wife. Next, we note that when the wife moved to New Jersey and petitioned the Georgia court for a modification seeking to become the primary residential parent, the Georgia court rejected her request and reaffirmed its position that "joint custody," as prescribed by the original divorce decree, was in the best interests of the child. Lastly, the reality of the situation is that the child, for the first six years of his life, has spent almost equal amounts of time with each parent. Therefore, we find that there was no reason to favor the former wife over the former husband when hearing the motions for modification.
Next, we review the standard for modification. "A custody order can only be modified upon a showing that there has been a substantial and material change in the parties' circumstances since the entry of the prior custody award, and that the best interests and welfare of the child will be promoted by a change of custody." Adams v. Adams, 385 So.2d 688, 689 (Fla. 3d DCA 1980). In the instant case, it is clear from both the former husband's petition for modification and the former wife's counter-petition for modification that a substantial change in circumstances had occurred. The parties agreed, although for different reasons, that the custody arrangement that had been established by the Georgia court was no longer workable and needed to be changed in order to serve the best interests of their minor child. Accordingly, we agree with the trial court that a modification was warranted.
Lastly, we must point out that, under the current state of the law in Florida, it would *888 be very rare for a Florida court to enter the type of "joint custody" order that was entered by the Georgia court in this case.
Courts of this state have consistently held that the best interests of children are not served by custodial arrangements which require the children to move back and forth between the residences of their parents.... Sharing parental rights and responsibilities is now presumptively in the best interest of children; rotating the primary physical residence of children remains presumptively not in their best interest.
Frey v. Wagner, 433 So.2d 60, 62 (Fla. 3d DCA 1983) (citations omitted); see also, Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980)("It is well-settled Florida law that split-custody provisions ... are strongly disfavored and ordinarily may not be sustained. The essential reason for this rule lies in the fact that, in the usual case, such an arrangement does not promote what is the only proper concern in custody cases: the best interests of the child." (citations omitted)).
Therefore, under this set of circumstances, where the parties have "joint custody" and have both alleged a substantial change in circumstances, the trial court did not abuse its discretion by treating the situation as if it was an initial custody determination and by applying the statutory factors that are normally used for an initial custody determination so that it could properly evaluate what would be in the best interests of the child. Additionally, after a careful review of the record, we find that the trial court's findings of fact are supported by competent, substantial evidence and that the trial court did not abuse its discretion by awarding primary residential custody of the parties' child to the husband.
The wife's remaining points lack merit.
We affirm.
BARKDULL and GODERICH, JJ., concur.
JORGENSON, Judge, dissenting.
I respectfully dissent. This case has been made difficult by the defective decree entered in Georgia in 1989 which did not contemplate the child's obvious need to eventually enroll in a primary school. Absent this defect, however, there would be no basisno substantial change in circumstancesfor modifying the custody determination made by the Georgia court. That determination was that the child would spend seven months of the year with his mother and five months with his father. The Georgia court allotted the primary portion of the residential custody to the mother. The relevant change is not in the circumstances of either the mother or the father, but in the child's naturally reaching an age at which certain particulars of the Georgia decree ceased to be workable. Under these circumstances, I do not believe the successor court to be at liberty to jettison the entire decree. See Hunter v. Hunter, 540 So.2d 235 (Fla. 3d DCA 1989)(discussing the trial court's limited discretion in modifying custody). Rather, the trial court should have modified the custody determination to accommodate the child's reaching school age, leaving intact the principal holding that the wife is the predominant residential custodian.
Further, even were there a basis to conduct a de novo review of custody, the trial court did not properly evaluate the statutory factors affecting the welfare and interests of the child under section 61.13(3), Florida Statutes (1995).[1] The trial court rated the parties *889 equally on factors (a), (b), (e), (h), (i), and (j). The trial court's findings for the husband on the remaining factors were based upon improper considerations. For instance, at the time of the hearings below, the mother was pregnant with her second child and unmarried. Under (d), "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity," the trial found the balance heavily in favor of the father "not based on the `morality' of having an out-of-wedlock child, but the practical hardship of bringing a child into the world under these circumstances and the effect it has on siblings." This finding evinces no real consideration of any detriment to the welfare of the child in this case, but, rather, improperly tends towards outdated, puritanical generalizations. See, e.g., Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991); Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982).
Under (f) and (g), "[t]he moral fitness of the parents" and "[t]he mental and physical health of the parents," the trial court stated concerning the mother's current pregnancy, "it is evidence of poor judgment to engage in unprotected sex in a non-monogamous relationship in this era of AIDS." However, there is absolutely nothing in the record to indicate that the pregnancy resulted from promiscuous behavior or unsafe sex. There is no testimony concerning whether the mother and her partner were HIV tested or whether they were using protection, which is not infallible.
Most questionable is the trial court's finding under (k), "[a]ny other fact considered by the Court to be relevant," "that it makes little sense for a child to spend his summers in Florida and his winters in Alaska." I am not aware of the ideal child-rearing climate, but I find this assertion highly suspect and one with which the permanent residents of Alaska would likely disagree. Some might find it better sense to allow the child the unique experience of the rugged Alaskan winter, with a nice two-week Christmas break with his father; and then an escape from Alaska's midnight sun to a Florida summer, which is not overrun with tourists.
The only factor upon which there might be some reasonable debate is (c), "[t]he capacity and disposition of the parents to provide the child with food, clothing, medical care ... and other material needs." The trial court found the father preferable because he is a financially conservative, long-standing U.S. Customs worker, living with his parents, who has foregone some visitation opportunities to work overtime. However, there is no comparative financial analysis of the parties' current or future assets or income. There is no indication whether the father works either short or long hours with Customs or must work weekends, whether he will continue to work overtime, or whether he is so financially conservative that he will not spend appropriate amounts for his child's welfare. The mother may indeed be a freer spirit, but indications are that her relative extravagance may be positively directed towards her children. She has a bachelor's degree in physics, is an experienced commercial pilot, and will soon be a high school science teacher with a work schedule that will match her children's school schedule. The trial court's conclusions on capacity to provide for the needs of the child are not supported by the record.
I would reverse and remand with instructions to modify custody and place the child with the mother during the school year.
NOTES
[1] (3) For purposes of shared parental responsibility and primary residence, the best interests of the child shall include an evaluation of all factors affecting the welfare and interests of the child, including, but not limited to:

(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
(b) The love, affection, and other emotional ties existing between the parents and the child.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home.
(f) The moral fitness of the parents.
(g) The mental and physical health of the parents.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(j) The willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) Any other fact considered by the court to be relevant.
§ 61.13, Fla.Stat. (1995).