694 So.2d 101 (1997)
Timothy A. HARPMAN, Appellant,
v.
Cynthia D. HARPMAN, Appellee.
No. 96-1951.
District Court of Appeal of Florida, Fifth District.
May 23, 1997.
*102 James L. Padgett, Crescent City, for Appellant.
Stephen E. Hilker, of Stephen E. Hilker, P.A., Palatka, for Appellee.
HARRIS, Judge.
The parties were divorced in 1994 and, pursuant to a settlement agreement which was approved by the court, a "rotating custody" arrangement was ordered for the parties' three children. Factors that influenced the parties to agree to, and the court to approve, rotating custody were the ages of their children, apparent preference for spending considerable time in each household, the close proximity of the parents home to one another, and the fact that the children would attend the same school regardless of which household they were residing in. Because of the rotating custody, the parties agreed to a downward departure from the child support guidelines, and this too was approved by the court.
When the agreement was executed both parents were school teachers. At about the time of the final hearing, the wife "resigned" her teaching job in Putnam County and accepted a job with the City of Jacksonville. Two years later, she petitioned for a modification of custody and support. Her alleged changes of circumstances were that her income had dropped; that the father had limited his child support to that required by the Final Judgment and had not contributed his share of the additional day-to-day expenses of the children contemplated by the parties when they entered into the agreement; that the father earns in excess of $30,000considerably more than the mother; that the father is unable to properly provide sleeping arrangements for the children; that the children are "confused" by the rotating custody as to where "home" is; and that the mother is considering a move to Jacksonville.
The mother's testimony at trial was that rotating custody did not work because of instability and for financial reasons. Her evidence of instability was basically her testimony that the children would ask: "Where do we stay tonight?" Her evidence of the financial failure of the rotating custody agreement was that she simply did not receive adequate support under the agreement. She further testified that her income was about the same now as when she was a teacher in the Putnam County School System. Because she had resigned her position with the School Board by the time the Final Judgment was entered and was drawing unemployment benefits, her present salary is considerably more than it was at the time of the Final Judgment.
She admitted at trial that she is unaware of how much the father spends on the children in excess of that required by the agreement and final judgment. She admitted that the father bought the children clothing but complained that he required that the clothing remain at his house. She failed to develop her allegation of inadequate sleeping arrangements in her direct testimony and admitted on cross that such arrangements "have improved." She also agreed on cross *103 examination that the children were "welladjusted young pre-teenagers." She admitted that her children were doing well (even if not as well as before) in school, that they attended church and the YMCA, and that her daughter had just been named cheerleader for the upcoming year. She further testified that the move to Jacksonville depended on her sale of her current residence, a residence that had been on the market unsuccessfully for two years. She further admitted that although the children would move with her if she moves, they did not want to leave their friends.
On the other hand, the husband presented evidence that he spent about $465 per month on the children above the court-ordered support amount.
The trial court granted the wife's motion to modify the rotating custody and increase the father's support obligation. The father appeals; we reverse.
It is difficult from the court's order to determine just what it found the substantial change of circumstances to be. It found that the mother's employment in Jacksonville created a problem with rotating custody, but doesn't tell us how. It appears that as long as the mother remains in Putnam County and commutes, the time the children reside with the father would help rather than harm either her or the children. The mother must get up at 5:30 a.m. in order to go to work. The children must be dropped off at day care very early on the days she has them.
There is simply no substantial evidence that any change had made rotating custody less desirable. The trial judge appears to take judicial notice (based on his experience in such matters), that "rotating custody in the same geographic area creates substantial problems and an unsettled environment for the children." Since rotating custody would never work unless the parties were in the same geographic area, it appears that the court is simply against the concept of rotating custody even if a prior judge, at the request of the parties, has ordered it. The court does not tell us the basis of its determination that there exists "an unsettled environment for the children." The children have successful learning experiences, social relations, and church activities. How have they been adversely affected by the rotating custody? The mother's only complaint was that the children would ask where they were scheduled to be. This seems to be consistent with the nature of rotating custody, an arrangement to which she agreed. It is not a change of circumstances. The only other thing that the court might have characterized as a substantial change of circumstances is the mother's decision to move to Jacksonville. But the move is at best a hope which has not developed into a concrete plan. A move will not occur, according to the mother, unless and until she sells her current house, a transaction which has eluded her for over two years.
In Dobbins v. Dobbins, 584 So.2d 1113, 1115 (Fla. 1st DCA 1991), the appellate court reversed a similar holding by finding that the former wife's
"contemplated" move is not out-of-state and is neither an accomplished fact nor an imminent possibility. It is at best a desire on her part, expressly conditioned upon the court's disposition of the custody matter. As such it is insufficient as a matter of law to regard a contemplated, conditional relocation as constituting a substantial change in circumstances, particularly in light of the geographic insignificance of the possible move [from Tallahassee to Jacksonville].
The record does not support a finding of a substantial change of circumstances which would warrant modifying the previous rotating custody agreed to by the parties and approved by the court in its Final Judgment. Since the increased support was based on the court's modification of the custody arrangement, it likewise is without foundation.
REVERSED and REMANDED for further action consistent with this opinion.
GRIFFIN, J., concurs in result only.
W. SHARP, J., concurs specially in part; dissents in part, with opinion.
W. SHARP, Judge, concurring specially in part; dissenting in part.
This is a close case. The former wife testified a change of circumstances had occurred since the parties entered into their rotating custody arrangement for two reasons: *104 1) rotating custody had created instability on the part of the children, socially and psychologically, because they were never sure where they were going to be housed next, and where "home" was; and 2) it created unfair financial pressure on her because she had residential custody of the three children roughly three-fourths to two-thirds of the time, but the former husband was not paying a "greater than normal share" of the children's day-to-day expenses, as was originally contemplated.
The court made findings upholding his change of custody from rotating to primary residential custody with the former wife and entered a child support order consistent with the guidelines. It found that there had been a change of circumstances, based on two grounds: 1) the rotating custody arrangement had produced lack of stability in the children's lives; and 2) it created economic and logistical hardships on the former wife, because she had taken a job in Jacksonville, necessitating a 70 mile commute from the parties' residences in Crescent City and Fruitland Park.
The problem in this case is that there was insufficient evidence to support a finding of change of circumstances, which impacted the "best interests" of the children. A party seeking a change of circumstances bears a heavy burden.[1] Here the testimony of the former spouses, the only witnesses at this trial, conflicted as to whether the children were being directly impacted by the rotating custody arrangement, psychologically and socially. Both agreed the children were in good health, doing well in school and their extra curricular activities, and showed no objective, measurable adverse consequences of the rotating custody arrangements.
Had the former wife moved to Jacksonville, or been imminently in the process of doing so, a change of circumstances would be clear. However, she testified her move remains a future plan, conditioned on selling her house that has been on the market for two years. A determination that a change of circumstances has occurred on that basis is premature.
However, I disagree with the majority opinion that the former wife failed to supply sufficient evidence to support the trial court's ruling that the former husband should assume a greater share of the parties' child support. The actual child support rulings of the trial court, which the former husband appeals, were based on primary residential custody of the parties' three children being awarded to the former wife. Thus, they may be inappropriate if the rotating custody plan is to continue. However, the court should now rule on the whether the former husband should pay that increased support if the rotating plan continues, and if so, what amount.
In my view, this issue should be remanded to the trial court for determination. The former wife established that she had the three children under her roof 2/3rd to 3/4ths of the time in actual days per year. She also established that the former husband paid but a small amount of their actual day care expenses, and that his court ordered payments of $600.00 per month payments in the winter and $300 per month in the summer did not defray these costs to her. If the incomes of these parties are roughly equal, they should be contributing an equal amount to their children's support. Since the children reside with the former wife 3/4ths of the time, his in kind contributions while the children are with him, do not balance out to a fair share.
NOTES
[1] Bennett v. Bennett, 73 So.2d 274 (Fla.1954); Richmond v. Richmond, 537 So.2d 1039 (Fla. 5th DCA 1988); McGregor v. McGregor, 418 So.2d 1073 (Fla. 5th DCA 1982); Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980).