756 So.2d 1024 (2000)
Donna WAYNO and Louis C. Rohde, etc., Appellants,
v.
Thomas M. WAYNO, Appellee.
No. 5D99-303.
District Court of Appeal of Florida, Fifth District.
March 24, 2000.
Rehearing Denied April 20, 2000.
*1025 Henry J. Martocci, Rockledge, for Appellants.
Thomas H. Yardley, Cocoa, for Appellee.
DAUKSCH, J.
This is an appeal from a judgment in a marital dissolution case. We find no error but write to address one point. Appellant asserts the court was bound to accept and ratify by judgment the mediated settlement regarding child custody once the court had granted its approval in accordance with rule 12.740(f)(2), Florida Family Law Rules of Procedure.
(2) After the agreement is filed, the court shall take action as required by law. When court approval is not necessary, the agreement shall become binding upon filing. When court approval is necessary, the agreement shall become binding upon approval. In either event, the agreement shall be made part of the final judgment or order in the case.
We disagree with appellant's assertion. The court had not heard evidence before its approval and granted the approval before rendering final judgment. It is axiomatic that only the court can be the final authority regarding child custody and child support and those issues can always be subject to review based on the evidence and, after judgment, upon a showing of a material change in circumstances. It goes without saying that the best interest of the child is the overriding factor to be considered. Even though the judge found in this case that a change in circumstances had occurred, that is not the guiding principle. Although the rule does not explicitly require it, it is at least implicit in the rule and certainly the better practice for the judge to not approve either custody or support before being fully informed about the welfare of the children. Thus, approval should be withheld in those issues until final judgment, or, if not, then the withdrawal of approval must be fully available until judgment. Therefore, the judgment is affirmed.
AFFIRMED.
COBB, J., concurs and concurs specially with opinion.
W. SHARP, J., dissents with opinion.
COBB, J., concurring specially.
I concur with the majority opinion. A trial judge has inherent authority to alter or rescind interlocutory orders prior to entry of final judgment. Young v. Young, 65 So.2d 28 (Fla.1953); Whitaker v. Wright, 100 Fla. 282, 129 So. 889 (1930). This authority certainly extends to a court's interlocutory approval of an agreement involving custody of children entered at a point in the case where the evidence has not been presented to the trial court. If this traditional concept is to be abrogated in custody cases, it should be done in a much clearer fashion than the provisions of Family Law Rule 12.740(f)(2).[1] I would construe that rule as providing that the *1026 interlocutory approval of a custody mediation agreement becomes final (and therefore no longer subject to rejection by the trial court) only at the time that agreement is made part of the final judgment, as is required by the rule. Thereafter, alteration of the custody provisions of the final judgment would be subject to change only upon a showing of a material change of circumstances. To construe the rule as does the dissent presents a trap for the unwary and well-intentioned trial judge, and seriously interferes with his obligation to protect the best interest of the child in a custody dispute.
W. SHARP, J., dissenting.
I respectfully disagree and would reverse this case. In my view, the trial judge erred when he changed the primary parental residency of the parties' daughter, after having approved the parties' mediation agreement which provided for primary residency to be with the former wife for the parties' daughter, and primary residency for the parties' son to be with the former husband. In my view, the majority opinion strips the new Family Law Rule of Procedure 12.740 of any effectiveness, or relevance, and if the majority opinion is to prevail in these cases, the rule needs reconsideration and redrafting.
Rule 12.740 provides for mediation of contested family matters in dissolution cases. If the parties reach an agreement through mediation, concerning any matter or issue, including legal or factual issues to be determined by the court, the agreement shall be reduced to writing, signed by the parties or stipulated to, and if not objected to by counsel timely under the rule, it is filed with the court by the mediator.[1] The issues of parental responsibility and primary residence were subjected to mediation in this case and the parties arrived at a formal settlement. The settlement was then presented to the court, pursuant to rule 12.740(f)(2).
Subdivision (f)(2) provides that after the agreement is filed by the mediator with the court, it becomes binding on the parties, if no court approval is required. But if court approval is necessary, "the agreement shall become binding upon approval. In either event, the agreement shall be made part of the final judgment or order in the case." We could find no case which discusses what kinds of settlement agreements necessitate court approval, but in any event in this case, the court did approve the mediated settlement agreement.
However, at the trial of this dissolution case, the court took the position that it was not bound by the court-approved settlement of the child custody issues. Seemingly, it recognized some difficulty with this position when it declared there had been a substantial change in circumstances since the settlement had been approved. However, it is clear from the testimony given by the two psychologists who testified in this case, which the trial court relied upon expressly as creating a change of circumstances, that nothing in fact had changed concerning the parties' circumstances since the mediation agreement had been approved.[2]
As to whether there had been a change in the parties' circumstances, Dr. Olsen *1027 was asked and answered the following questions:
Q. Do you know of anything or have you learned of anything since, that occurred since May of 1998, May 21st of 1998, which would constitute a substantial change in circumstances which would require this Court to overturn that mediation agreement?
A. No. I think these patterns have been going on, A, for a long time in the marriage and, B, have been escalated the whole time they've been living in the house but estranged. So nothing knew [sic] that I can see has occurred from May to the time that I evaluated them.
Q. You don't know of any emergency situation that would require a change?
A. No, I don't.
Similarly, when asked about a change in circumstances, Dr. Connick testified:
Regardless of whether you've done a custody evaluation, do you know and/or have you learned from your therapy sessions with Donna and Tommy and the children of any substantial change in circumstances which has occurred since May 21st, 1998 that would require a change of that agreement?
A. I don't know of any.
Even the former husband was unable to identify what emergency circumstances or change of circumstances had occurred since he signed the settlement agreement that would justify modification. He said: "Well, I think the most important thing is that Donna has failed to include her daughter, who she is petitioning the court for custody of, in her week-end activities and in her afternoon activities." He failed to tie this behavior to post-settlement behavior as opposed to his former wife's behavior prior to the settlement. Further, as measured by typical change of circumstances cases justifying a change in child custody, this testimony is clearly insufficient to meet that difficult burden. See Harpman v. Harpman, 694 So.2d 101 (Fla. 5th DCA 1997); Miller v. Miller, 671 So.2d 849 (Fla. 5th DCA 1996).
Dissecting this case to what actually occurred and by-passing the legalese, the trial judge in this case erroneously allowed the former husband to try the issue of child custody in the dissolution case despite the mediated court-approved settlement of this issue, where the former husband neither pled nor proved a substantial change in circumstances and having heard the testimony, the court decided the custody issued do novo. This may be proper in cases involving settlement agreements between parties, which have not been court approved. See Jones v. Jones, 674 So.2d 770 (Fla. 5th DCA 1996); McAlister v. Shaver, 633 So.2d 494 (Fla. 5th DCA 1994); Doss v. Doss, 627 So.2d 1297 (Fla. 5th DCA 1993). But this is not such a case.
The question in this case is whether a court-approved settlement agreement mediated pursuant to the Florida Family Law Rules is entitled to the same kind of finality as settlement agreements incorporated in final judgments. See Davis v. Fisher, 391 So.2d 810 (Fla. 5th DCA 1980); Jane v. Fero, 678 So.2d 496 (Fla. 5th DCA 1996);Jones v. Jones, 674 So.2d 770 (Fla. 5th DCA 1996); McAlister.
In my view, the rules suggest that mediation agreements, after being filed and particularly after being court-approved, are entitled to be treated as final determinations of the issues covered. If not, there is very little incentive for parties to engage in mediation, in the first place. Why should they go to the trouble and expense to mediate if the issues resolved can be freely retried in the dissolution case by a party, belatedly unhappy with the mediated settlement? Parties should be encouraged to mediate family law disputes, and *1028 when the process is followed and the agreement is approved by the court they should be bound by their agreement.[3] Otherwise the mediation process is an exercise in futility.
In addition, I think the trial court erred in imputing a net income to the former wife of $727 per month. The court found that the former wife had not worked for any significant period of time since having her first child in 1984, and that she has "some" marketing skills. She testified she earned $8.00 to $10.00 per month from rebating and made $35.00 in commission, maximum, from selling Tupperware.
In determining the amount of child support and alimony, the court may impute income to a spouse based on past earnings and earnings potential. Beers v. Beers, 724 So.2d 109 (Fla. 5th DCA 1998), rev. denied, 735 So.2d 1283 (Fla.1999). The former wife's past history of earnings is clearly insufficient to support the imputed amount of $727 per month. She conceded she thought she could earn the minimum wage of about $5.00 or $6.00 per hour. Using the federal minimal wage of $5.15 per hour,[4] the former wife could gross, at best, $670 per month for a 30 hour week and $893 a month for a 40 hour week. But the $727 net monthly income imputed to her is apparently based on a gross monthly income of $909, for which there is no support in the record. I would also remand for reconsideration of the alimony and support issues.
NOTES
[1] This subsection of the rule provides:

(2) After the agreement is filed, the court shall take action as required by law. When court approval is not necessary, the agreement shall become binding upon filing. When court approval is necessary, the agreement shall become binding upon approval. In either event, the agreement shall be made part of the final judgment or order in the case.
[1] Florida Family Law Rule of Procedure 12.740(f)(1).
[2] The court ruled as follows:

5. The Court considers a most material and substantial change of circumstance has occurred since the Court temporarily allowed the parents to have joint primary residential responsibility of the children and subsequently approved the Partial Mediation Agreement between the parties which split the primary residential responsibility of the two children. This change is based on the subsequent striking testimony of Dr. Olsen that custody of the two (2) children should not be split and the Husband is the better custodial parent, together with corroboration on the part of Dr. Connik who opined on the benefit of having the two (2) children remain together rather than splitting the custody of them. Further, the psychological deficits of the parents, particularly the Wife, causes the Court grave concern that the daughter would have a most difficult time achieving normal adulthood if her primary nurturing parent having primary residential responsibility over her daughter were the Wife; whereas, the likelihood of the daughter achieving successful adulthood appears substantially greater if the daughter were under the primary residential responsibility of the Husband.
[3] In Trowbridge v. Trowbridge, 674 So.2d 928, 931 (Fla. 4th DCA 1996), the fourth district explained:

Mediation settlement agreements differ from traditional prenuptial and postnuptial agreements. Typically, the parties enter into prenuptial and postnuptial agreements without court supervision. Mediation agreements are reached under court supervision, before a neutral mediator. The mediation rules create an environment intended to produce a final settlement of the issues with safeguards against the elements of fraud, overreaching, etc., in the settlement process.
Trowbridge v. Trowbridge, 674 So.2d 928, 931 (Fla. 4th DCA 1996).
[4] See 29 U.S.C. § 206(a)(1) ("every employer shall pay to each of his employees who in any work week is engaged in commerce or in the production of goods for commerce ... at the following rates: ... not less than $5.15 an hour beginning September 1, 1997").