854 So.2d 262 (2003)
Charles Alan COOPER, Appellant,
v.
Robin L. GRESS, f/k/a Robin L. Cooper, Appellee.
No. 1D02-4376.
District Court of Appeal of Florida, First District.
September 12, 2003.
*263 William D. Cochran, IV; and Michael J. Korn, of Korn & Zehmer, P.A., Jacksonville, for Appellant.
James T. Miller, Jacksonville, for Appellee.
BROWNING, J.
Charles Alan Cooper, the former husband, appeals an order granting the supplemental petition filed by the former wife, Robin L. Gress (formerly known as Robin L. Cooper), seeking to modify the rotating-custody arrangement approved in the final judgment of dissolution of marriage. Concluding that the trial court applied the wrong legal standard to the modification question, and that the former wife failed to satisfy the extraordinary burden to warrant modifying custody, we reverse the order and remand with instructions to reinstate the original rotating custody plan and child-support obligation. See Ring v. Ring, 834 So.2d 216 (Fla. 2d DCA 2002) (holding that party seeking post-dissolution modification of custody has extraordinary burden to prove occurrence of substantial, material change in circumstances since final judgment that is detrimental to children's best interests; and that parties' continuing hostility and mutual failure to communicate did not constitute material change in circumstances justifying custody modification for three of parties' four children).
The parties were married in February 1992 and have a daughter (born in March 1994) and a son (born in July 1996). In December 1998, the former husband petitioned to dissolve the marriage. At about the same time, the parties signed a stipulation and agreement asking the trial court to incorporate the whole agreement into its final judgment. In pertinent part, the parties agreed to rotate custody of the children to allow each parent an equal amount of custodial time. Each of the parties recognized that the other is a fit parent who has a unique contribution to offer the children. The parties agreed to share all decisions regarding the children's health and medical and dental care, religious and secular education, vacations and travel, extracurricular activities, and general welfare and upbringing. While the parties expressly agreed to work together cooperatively to realize the goals set forth in the stipulation and agreement, they acknowledged the possibility that the children's custodial needs might change or that the parties might not be able to resolve "future controversy" in a mutually acceptable way. Accordingly, the "Split Custody" section of the stipulation and agreement includes the following language:

*264 The parents are aware of the changing needs of their children, as well as their own changing lifestyles. Therefore, the parties shall renegotiate their timesharing plans as needed to accommodate these changing needs.
The parents shall, if they cannot mutually resolve future controversy between them regarding their children and their relationship as parents, mutually seek an appointment with the Family Mediation Unit, or with any mediator of their choice, for assistance in resolving this controversy on a mutually acceptable basis.
The parties agreed on a plan under which the children would spend one week with one parent and then move to the other parent's residence every Friday. Certain exceptions were contemplated for significant holidays and for school vacation periods.
The trial court issued a January 1999 final judgment dissolving the marriage and incorporating the specific terms of the parties' stipulation and agreement in all material respects. Each party was made solely responsible for the payment of his or her own attorney's fees and costs. The trial court retained jurisdiction to enforce or modify the judgment provisions as may be legally permissible and warranted.
In June 2000, the former husband filed an emergency petition to enforce his visitation rights while the children were residing with their mother. He alleged that she was restricting and trying to control his visitation and was speaking disparagingly to the children about him and his new wife. The former wife (who also had remarried) responded by filing a supplemental petition to modify the final judgment by designating herself as the primary residential parent, by allowing the former husband frequent and liberal visitation, and by ordering him to pay her for child support and attorney's fees and costs. The former wife's motion alleged that she had agreed to the rotating-custody arrangement because the former husband promised mutual cooperation on all issues concerning their children. She alleged that his cooperation had ceased and that the parties' ability to communicate had diminished. The motion alleged, further, that a serious illness had recently befallen the former husband, sometimes rendering it impossible for him to provide personal care for the children. The former wife alleged "[t]here has been a substantial and material change in circumstances since the entry of the Final Judgment, specifically: 1) the parties do not communicate with each other; 2) the former husband sometimes is unable to care for the children; 3) the children desire to live with their mother full-time; 4) it would be in the children's best interests to reside primarily with their mother; and 5) the former wife needs child support from the former husband. The motion alleged that the former wife is unable to pay her attorney's fees and costs and that the former husband has the financial means to pay.
The former husband filed an answer and a supplemental counter-petition asking the court to designate him as the primary physical residential parent. Like the former wife, he conceded that the parties' ability to communicate with each other has deteriorated since the entry of the final judgment of dissolution. To support his counter-petition, the former husband alleged that the former wife had failed to abide by the terms of the final judgment by interfering with, restricting, and trying to control his visitation; that she had spoken disparagingly to the children about him and his current wife; that the former wife had harassed him with numerous e-mails and telephone calls; and that she had refused to keep him informed about *265 the children's whereabouts outside Florida and about their medical care.
Significantly, a different circuit judge from the one who had entered the final judgment of dissolution incorporating the rotating-custody plan presided over the modification hearing. The trial court found that the children's best interests and welfare will be served by granting the former wife primary residential custody. The court found that the children seem "somewhat happy" but "act too serious." They appear to be edgy and pensive when both parents are present; the children seem not to have the freedom to enjoy themselves when the former husband is present. They appear to bear a heavier burden to please their father. The court found that due to the parties' inability to communicate effectively, the children have been denied normal socialization opportunities and participation in youth activities involving their church and choir, T-ball, Girl Scouts, karate, and summer camp, and have suffered because of the parties' behavior toward each other. Despite their mutual inability to communicate effectively, both parties were found to be very committed, devoted parents who appear to seek the best for their children. Tracking the factors set forth in section 61.13(3), Florida Statutes (1999), which are typically used to make initial custody determinations, the trial court made findings regarding each party and designated the former wife as the primary residential parent. The court reserved jurisdiction to decide child support and attorney's fees and costs, which it subsequently awarded.
The former husband contends that the trial court applied the wrong legal standard to the issue of whether to modify the custody arrangement. We have de novo review over this question of law. See Gilliam v. Smart, 809 So.2d 905 (Fla. 1st DCA 2002). Clearly, "[a] trial court's authority and discretion in a modification proceeding are more restricted than at the time of the initial custody determination." Newsom v. Newsom, 759 So.2d 718, 719 (Fla. 2d DCA 2000); Young v. Young, 732 So.2d 1133 (Fla. 1st DCA 1999); Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991); Zediker v. Zediker, 444 So.2d 1034, 1036 (Fla. 1st DCA 1984) (describing movant's "extraordinary burden" to satisfy "substantial change in circumstances" and "children's best interests" tests to justify modification). In seeking a modification of custody, the movant must show both that the circumstances have substantially, materially changed since the original custody determination and that the child's best interests justify changing custody. Newsom, 759 So.2d at 719; Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1996). Furthermore, the substantial change must be one that was not reasonably contemplated at the time of the original judgment. Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992).
Although the former wife's supplemental petition for modification invoked the "magic words," alleging a substantial change of circumstances since the final judgment, in fact the general allegations are insufficient as a matter of law to satisfy the "substantial change" prong, and the trial court reversibly erred in holding the former wife to a significantly lower burden to prove only the "best interests" prong. The fact that the parties had a rotating-custody arrangement, or that both parties were seeking designation as the primary physical residential parent, did not lessen the evidentiary threshold, given the facts in this case.
The custody evaluation that preceded the modification hearing clearly documented the pattern of friction between the parties. The parties' mutual inability to get along is evident also from the testimony presented at the hearing. The court sua *266 sponte appointed a licensed clinical psychologist, Dr. McGowan, to conduct a custody evaluation. One of Dr. McGowan's recommendations was that the parties continue to share residential responsibility for the children, in light of her finding that both parents have been primary caretakers and have discharged their parenting duties adequately. The trial judge's cousin, Dr. Soud, who had been the children's treating pediatrician since 1998, was offered as a witness without an objection. He testified that at a conference with both parties, he had indicated that he "was not all that sure" that the week-to-week rotating-custody arrangement was "an ideal custody situation" for the children's well-being. He acknowledged that he is not a believer in any sort of 50-50 custody split because, in his opinion, it does not work very well for children. The doctor expressed concern that the rotating plan did not provide the children with an opportunity to have one place to call home or to develop close neighborhood relationships. He preferred the more traditional arrangement where one parent is the primary residential custodian but both parents remain actively involved in issues concerning their children's care. The witness opined that the parties' problems communicating with each other would exist irrespective of the particular custody plan in place. Dr. Soud testified that, typically, he can get more reliable medical treatment information about a child from the parent who, as the primary residential custodian, spends more time with the child.
Although this record is replete with instances of the parties' mutual failure to communicate effectively, the former wife failed to allege and prove an unanticipated substantial, material change in circumstances since the entry of the final judgment. See Chapman v. Prevatt, 845 So.2d 976 (Fla. 4th DCA 2003) (finding that trial court abused its discretion in modifying custody to institute annual rotating-custody plan, where neither parent had sought rotational residential custody, no evidence was presented indicating that children were being harmed by parents' hostile treatment of each other, and fact that parents could not get along post-judgment, without more, failed to show substantial or material change in circumstances warranting modification); Newsom, 759 So.2d at 719 (stating "[t]he fact that the parents cannot communicate and get along does not constitute a material change in circumstances to warrant modification of custody"); Zediker, 444 So.2d at 1034. The parties' failure to communicate with each other, without some other material, unanticipated change since the final judgment, is not a proper legal ground for modifying custody. See Perdices v. Perdices, 800 So.2d 289, 291 (Fla. 3d DCA 2001) (holding trial court abused its discretion in modifying custody based on sole allegation that parents' ability to cooperate with each other had deteriorated, which did not constitute substantial change in circumstances); Boardman v. Roy, 775 So.2d 334 (Fla. 2d DCA 2000).
Section 61.121, Florida Statutes (1999), states that "[t]he court may order rotating custody if the court finds that rotating custody will be in the best interest of the child." Even so, nothing in this plain statutory language indicates the Florida Legislature intended to eliminate the longstanding presumption that rotating custody is not in a minor child's best interest. See, e.g., Mandell v. Mandell, 741 So.2d 617 (Fla. 2d DCA 1999); Ruffridge v. Ruffridge, 687 So.2d 48, 50 (Fla. 1st DCA 1997). To support affirmance of the modification order, the answer brief emphasizes the presumptive disapproval of rotating-custody plans. However, the former wife's reliance on the presumption against rotating custody misses the mark, *267 as applied to the modification proceedings at hand, for the approval of the parties' requested rotating-custody plan was memorialized in the final judgment of dissolution.
The posture of a modification proceeding is entirely different from that of an initial custody determination, and the party seeking to modify custody has a much heavier burden to show a proper ground for the change. The trial judge's personal observation, stated in the record, that rotating custody arrangements never work, does not justify modifying the custody plan, absent a substantial change of circumstances resulting in the modification's being in the children's best interests. Voorhies v. Voorhies, 705 So.2d 1064, 1065 (Fla. 1st DCA 1998). There is no bright-line rule disfavoring rotating-custody plans, yet the instant trial court appears to have crafted one. The Third District Court in Quinn v. Settel, 682 So.2d 617, 619 (Fla. 3d DCA 1996), recognized that "certain particular circumstances will tend to ameliorate some of the perceived undesirable effects of such arrangements." The existence of the presumption against rotating custody in an initial custody determination, or the fact that a trial judge disapproves of rotating-custody arrangements in general, cannot be allowed to undermine the long-established requirement that the party seeking to modify custody satisfy the extraordinary burden set forth in the two-part test. To hold otherwise would render any rotating-custody scheme in a final judgment inherently unstable. The parties' rotating-custody plan was already in place, in accordance with their own stipulation and agreement, incorporated into the final judgment of dissolution. Whether or not splitting custody 50-50 was appropriate had already been adjudicated; thus, the presumption against such arrangements had been overcome by agreement of the parties and with the agreement of the original trial judge.
Thus, the pertinent question before the trial court in considering the petition was whether any modification was warranted, not whether the former wife is the better primary custodial parent. In fact, the relative fitness of the parties as parents was not the focus of the hearing. The court and Dr. McGowan opined that both parties are fit, loving parents who simply cannot seem to carry out the terms of their original custody agreement without acrimony. Given these findings, competent substantial evidence would support either party's being the primary physical residential parent if a proper basis for modifying the rotating-custody plan were alleged and proven. However, no such threshold ground was alleged or established. Accordingly, there is no ground for changing the custody plan at all.
It is telling that the children's pediatrician observed that their place of residence is not the issue; that is, changing the custody arrangement will not resolve the underlying parental communications problems. While the supposed "cure" imposed by the trial court involves a more conventional plan giving one of the parents primary physical residential status, the "illness," comprising the parties' mistrust and miscommunication, is likely to persist under the new arrangement, for the real problem has not been resolved. Although the record is sketchy on this matter, it appears that some effort was made to resolve the parties' post-judgment communications problems through counseling, but that the sessions failed to effect long-term, positive changes.
Aside from the mutual breakdown in communications, another alleged ground for modification was the former husband's serious illness, which at one time resulted in an extended period of hospitalization *268 and rendered him unable to provide personal care for the children. This ground seems moot, given the unrefuted testimony that his condition is in remission. Although the petition alleged that the children desired to live with their mother full-time, there is no evidentiary basis for this assertion. In any event, the trial court found that the reasonable preference of the children should not be considered in light of their young ages.
The former wife argues that where both parents share custody and allege a substantial change of circumstances, the "playing field" is level again, so that the modification question should be treated de novo, as in an initial custody determination. We disagree. The cases on which she relies for this proposition are factually distinguishable in several material respects and, thus, are not controlling here. See, e.g., Greene v. Suhor, 783 So.2d 290 (Fla. 5th DCA 2001) (stating that father seeking primary residential custody of child was not required to prove substantial change in circumstances at modification hearing, and hearing should have been treated as initial custody determination using "best interests" standard, where original custody order provided for rotating custody and expressly provided that either parent could seek reconsideration of residential-custody issue without showing change in circumstances); Mooney v. Mooney, 729 So.2d 1015 (Fla. 1st DCA 1999) (finding neither party bore higher burden of proof in custody modification proceeding, where final judgment of dissolution had provided for weekly rotating custody, and parties had agreed originally that child's starting kindergarten would constitute change of circumstances requiring custody question to be revisited); Skirko v. Skirko, 677 So.2d 885 (Fla. 3d DCA 1996) (indicating that custody modification proceeding can be treated as initial custody determination where both parents allege and prove substantial change of circumstances, and statutory factors normally used for initial custody decision can be applied to evaluate what is in child's best interests). Because the instant facts materially differ from the specific circumstances in those cases that warranted a de novo modification determination, those decisions do not support the ruling designating the former wife as the primary residential parent. The parties' motions alleged nothing more than their inability to communicate and cooperate. The trial court failed to hold the parties to the extraordinary burden of proof required under the law, and the factual allegations in their motions for modification are facially insufficient as a matter of law to justify any modification of custody.
Accordingly, we REVERSE the order and REMAND with instructions to reinstate the rotating-custody plan and the original child-support obligation. We note that the reversal of child support is not retroactive.
KAHN and VAN NORTWICK, JJ., CONCUR.