902 So.2d 174 (2005)
Schiller A. BAZAN, Jr., Appellant,
v.
Mary GAMBONE, Appellee.
No. 3D03-2417.
District Court of Appeal of Florida, Third District.
February 9, 2005.
Rehearing and Rehearing Denied June 10, 2005.
*175 George M. Evans, Coral Gables, for appellant.
Leonardo G. Renaud, for appellee.
Before SHEPHERD, CORTIÑAS, and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied June 10, 2005.
CORTIÑAS, Judge.
The former husband, Schiller A. Bazan, Jr., appeals from a final judgment of the trial court on custody and relocation arising from the former wife's emergency petition for relocation. We find that the trial court applied the incorrect legal standard for modification of an existing custody order *176 and that the former wife failed to satisfy the stringent requirements for modification of an existing custody order. Accordingly, we reverse.
The parties were married on April 18, 1991, and their only child, Sasha, was born on June 20, 1993. On March 17, 1997, the former husband filed a petition for dissolution of marriage. On March 21, 1997, the trial court entered a final judgment of dissolution of marriage that incorporated the parties' marital settlement agreement ("original agreement"). The original agreement provided that the former wife would be the primary physical residential custodian and that the parties would have shared parental responsibility.
Thereafter, on September 2, 1999, the former husband filed a Petition for Modification of Primary Physical Residential Responsibility, Visitation and Child Support. In April 2000, the parties entered into a modified marital settlement agreement that provided for rotating custody with shared parental responsibility ("joint custody agreement"). Under the terms of the joint custody agreement, the child would stay at the former husband's home on Mondays, Tuesdays, Thursdays, and alternating Sundays; while, on Wednesdays, Fridays, Saturdays, and alternating Sundays, the child would stay at the former wife's home. The joint custody agreement also provided that each parent would have reasonable access to the child on school nights while she was with the other parent in order to check the child's homework. On July 18, 2000, the trial court entered an order modifying the parties' original agreement and modifying the final judgment to incorporate the joint custody agreement.
For over two years, the parties abided by the terms of their joint custody agreement.
On September 20, 2002, the former wife filed a Verified Emergency[1] Supplemental Petition to Relocate Residence of Minor Child and Other Relief. In the petition, the former wife alleged that a substantial change in circumstances occurred because (1) her mother, the child's grandmother, was in poor health and needed assistance; (2) the former wife had been offered a job at her mother's company in Ohio at double her current salary; and (3) she and the minor child would be able to live rent-free at her mother's home. As a result, the former wife sought modification of the joint custody agreement.[2] The former wife alleged that, in light of these changed circumstances, modification of the joint custody agreement and relocation of the child to Ohio would be in the child's best interest.
On October 11, 2002, the former husband, appearing pro se, filed an answer and a counter-petition for temporary custody of the minor child. The former husband objected to the relocation stating that it was not in the best interest of the child. He alleged that there was no change in circumstances as the former wife's mother was being cared for her by her other children who live in Ohio.[3] He explained that the child was presently enrolled in the Magnet Language Program at Sunset Elementary, *177 that she was excelling, and that she would not be able to enjoy her current level of education in Ohio. The former husband also alleged that relocation would disrupt their existing relationship and their daily contact. The former husband stated that he helps the child on a daily basis with her French homework and that he takes her to extracurricular activities such as religious education classes, dance classes, skating, etc. The former husband alleged that the only time he does not exercise his visitation is when the wife does not return his phone calls so that he can make arrangements to see the child. Lastly, the former husband noted that he had previously rejected job opportunities that would have benefited him financially because they required relocation with the child to foreign countries, and the former wife had objected.
On December 11, 2002, the trial court appointed a Guardian Ad Litem. On June 17, 2003, the Guardian filed a report.[4] In the report, the Guardian noted that the child wants to be with both parents and does not want the former wife to move to Ohio. The Guardian found that, in addition to being in the French Program at the "A"-rated Sunset Elementary School, the minor child was accepted into the school's gifted program for the 2002-03 academic year. Nevertheless, the Guardian recommended that the mother be allowed to relocate with the minor child to Ohio, citing, among other things, that "the mother and child will be living in a home rather than a rental apartment," "Canton, Ohio provides amenities of the big city with a small city environment," and "the minor child and the Father can enjoy time together daily electronically, either via video conferencing or via video phone."
Both the Guardian and the trial court emphasized the parties' bickering and the difficulty that such conduct causes for the minor child. In the report, the Guardian stated that although the ideal situation would be for Sasha to be able to continue a 50% time sharing arrangement, the parties bicker, are distrustful of one another, and often place Sasha in the middle to contend with their competing interests.
On appeal, the former husband argues that the trial court applied the incorrect legal standard in considering the modification of the joint custody agreement. Since this is question of law, the court exercises de novo review over this issue. Cooper v. Gress, 854 So.2d 262, 265 (Fla. 1st DCA 2003).
It is well settled that a trial court's authority and discretion in a modification proceeding is substantially more restricted than at the time of the original custody determination. Cooper, 854 So.2d at 265; Adams v. Adams, 385 So.2d 688, 689 (Fla. 3d DCA 1980). Indeed, "[a] parent seeking to modify a prior custody award bears the extraordinary burden of demonstrating a substantial change in circumstances since the entry of the initial custody decree and that the child's best interest or welfare will be promoted by the change." Perez v. Perez, 767 So.2d 513, 516 (Fla. 3d DCA 2000) (citations omitted). In applying this two-prong test for modification of a custody order, Florida courts have consistently held that the moving party must show that maintaining the existing custody arrangement would be detrimental to or have an adverse impact on the child. Perez, 767 So.2d at 516; Gibbs v. Gibbs, 686 So.2d 639, 641 (Fla. 2d DCA 1996). Furthermore, the substantial *178 change must be one that was not reasonably contemplated at the time of the final judgment of dissolution. Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992).
Although the trial court expressed concern about the parties' bickering and the difficulty that such conduct causes for the minor child, this is insufficient to support modification. That the parents have an acrimonious relationship and do not communicate effectively does not constitute a material change in circumstances to warrant modification of custody. Ring v. Ring, 834 So.2d 216 (Fla. 2nd DCA 2002); Newsom v. Newsom, 759 So.2d 718 (Fla. 2nd DCA 2000); see Zediker v. Zediker, 444 So.2d 1034, 1036 (Fla. 1st DCA 1984).
The instant case is factually similar to Cooper v. Gress, 854 So.2d 262 (Fla. 1st DCA 2003). In that case, the parties had a joint custody agreement with respect to their minor children whereby the children would spend rotating weeks with each of their parents. Cooper, 854 So.2d at 264. Seventeen months after the court incorporated their joint custody agreement into the final judgment, the former wife sought modification and designation as the primary residential parent based on the following alleged changed circumstances:
1)the parties do not communicate with each other; 2) the former husband sometimes is unable to care for the children; 3) the children desire to live with their mother full-time; 4) it would be in the children's best interest to reside primarily with their mother; and 5) the former wife needs child support from the former husband.
Cooper, 854 So.2d at 264. The court noted that the former wife invoked the "magic words," alleging a substantial change of circumstances, but, found that the allegations raised were insufficient as a matter of law to satisfy the "substantial change" requirement. Cooper, 854 So.2d at 265. The court held that the trial court failed to hold the parties to the extraordinary burden of proof required to support modification and reinstated the prior rotating custody agreement.
The fact that this case involved a joint custody agreement, which are generally disfavored when considering initial custody determinations, does not lessen the movant's extraordinary burden when seeking modification. As the Cooper court correctly stated:
The existence of the presumption against rotating custody in an initial custody determination, or the fact that a trial judge disapproves of rotating-custody arrangements in general, cannot be allowed to undermine the long-established requirement that the party seeking to modify custody satisfy the extraordinary burden set forth in the two-part test. To hold otherwise would render any rotating-custody scheme in a final judgment inherently unstable.
Cooper, 854 So.2d at 267; see Harpman v. Harpman, 694 So.2d 101, 103 (Fla. 5th DCA 1997). As such, the existence of a joint custody agreement has no bearing on the application of the stringent two-prong test for modification.
In this case, while it is alleged that the former wife and her mother would benefit from the custody change and that the child would live in a home rather than a rental apartment, these allegations are legally insufficient to satisfy the extraordinary burden required to support modification. We find that the former wife's allegations in support of modification are insufficient as a matter of law to satisfy the "substantial change" prong. Moreover, other than the tense relationship which exists between the parents (which was exacerbated by the former *179 wife's petition for relocation), there is nothing in the record, by allegation or evidence, that would tend to establish that "the child's best interest or welfare will be promoted by the change." Perez, 767 So.2d at 516. Paramount in this consideration is the best interest of the child rather than the best interest of any particular parent or his/her relative(s).
The record in this case is devoid of any allegations or facts that would tend to show that maintaining the joint custody agreement would be detrimental to or have an adverse impact on the child. On the contrary, the record in this case supports the fact that both parties are very decent, loving, and caring parents of Sasha, and that, although the parties bicker and apparently distrust each other, they complied with the joint custody agreement for over two years.
Accordingly, we reverse the order granting relocation and remand with instructions directing the trial court to forthwith reinstate the final judgment dated July 18, 2002, incorporating the joint custody agreement detailed in the parties' modified marital settlement agreement.
Reversed.
NOTES
[1] The hearing on the "emergency" petition took place almost ten months later on July 7, 2003, and the trial court entered its order on August 8, 2003.
[2] Although the original petition requested relocation, the trial court properly treated the former wife's petition as a request for modification of the existing joint custody agreement. The former husband's claim that the trial court erred in this respect is without merit.
[3] During the hearing, the former wife's brother testified that the former wife's mother was being cared for by her three sons and one of their spouses, all of whom who live in Ohio.
[4] The former husband's third point on appeal lacks merit because the Guardian's alleged hearsay testimony was also contained in the report that the parties admitted into evidence by stipulation.